**Deloris AXELROD, et al., Plaintiffs,**

v.

**Robert EARHART, et al., Defendants.**

**No. 80 C 911.**

United States District Court,
N.D. Illinois, E.D.

May 18, 1983.

---

**550**

Louis S. Goldstein, Louis S. Goldstein & Associates, Ltd., Chicago, Ill., for plaintiffs.

Fred L. Foreman, State's Atty. of Lake County, James C. Bakk, Asst. State's Atty., Waukegan, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Fifteen Lake County taxpayers originally brought this putative class action under 42 U.S.C. § 1983 ("Section 1983") against officials and governmental bodies responsible for administering Lake County's real estate tax assessment system.[1] Focusing on the years 1977 through 1979, plaintiffs' Second Amended Complaint (the "Complaint") attacks the system on due process and equal protection grounds. All remaining defendants in this case (Lake County, the Board and its members and Jasper) now move pursuant to Fed.R.Civ.P. ("Rule") 12(b)(1) and 12(h)(3) to dismiss this lawsuit for want of subject matter jurisdiction. For the reasons stated in this memorandum opinion and order, that motion is granted.

### Findings of Fact[2]

To illuminate the issues raised by the motion to dismiss, this section of the opinion will first explore the state remedies available to taxpayers who wish to challenge their real estate tax assessments. It will then turn to plaintiffs' own experiences in pursuing those remedies.

Any dissatisfied taxpayer must first file an assessment complaint with the Board. Shortly thereafter (between six months to a year before the actual tax bill arrives, for Illinois tax bills are rendered during the year following the assessment year) the taxpayer is afforded a hearing, at which he or she must "[b]e prepared to discuss the market value of [his] property as of January 1" of the assessment year (Pl.Ex. A[3]). In addition the taxpayer may tender (in advance of the hearing) a list of no more than three comparable properties assessed at lower rates. To receive serious consideration from the Board, the taxpayer must have cooperated with the field appraisers

---

1. Defendants originally included (1) Deerfield, West Deerfield and Grant Townships as representatives of the class of all townships in Lake County, (2) the assessors in the named townships as representatives of the class of Lake County township assessors, (3) Lake County Supervisor of Assessment Robert G. Jasper ("Jasper"), (4) Lake County itself, (5) Lake County Board of Review (the "Board"), and (6) the Board's individual members since 1977. Recently plaintiffs reached a settlement agreement with the named townships and their respective assessors. Those defendants are therefore no longer parties to this action; but as the conclusion of this opinion makes plain, the settlements now require reexamination.

2. Defendants' Rule 12(b)(1) motion has challenged the substance (and not the sufficiency) of the Complaint's jurisdictional allegations. This Court may therefore entertain affidavits and other evidentiary sources, weighing any conflicting evidence (in contrast to summary judgment practice). In that respect plaintiffs have the burden of supporting their jurisdictional assertions by competent proof. *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979); 5 Wright & Miller, *Federal Practice and Procedure* § 1350, at 549–50 & n. 77 (1969). Because the factual account in this section is based upon (1) uncontroverted evidence proffered by either side and (2) this Court's resolution of any conflicting evidence, this section may accurately be labeled as containing this Court's findings of fact.

3. Exhibit A is a two page document entitled "Board of Review Suggestions To Assist the Taxpayer," in which the Board outlines in layman's terms (1) the procedures for contesting assessments and (2) the taxpayer's evidentiary responsibilities at the Board hearing.

who visited the property before the hearing to conduct an independent appraisal. In arriving at its determination the Board compares that appraisal with the original assessment. Because of the large number of assessment complaints filed each year, the Board schedules hearings at 15-minute intervals.

If the taxpayer is dissatisfied with the Board's disposition of his or her complaint, he or she has two mutually exclusive remedies, both of which afford de novo consideration. One option is an appeal to the state Property Tax Appeal Board ("PTAB"). Ill. Rev.Stat. ch. 120, § 592.4 makes PTAB's final determinations reviewable by the Circuit Court of Lake County. Alternatively the taxpayer may pay the contested tax under protest, then file a tax objection when the Lake County Collector files an application for judgment before the Circuit Court.

None of the plaintiffs properly availed himself or herself of the second option in any of the three years at issue. Several plaintiffs attempted to do so in 1978, but the Circuit Court dismissed their tax objections because they had either failed to exhaust their administrative remedy (before the Board) or had already invoked the PTAB remedy for that year. As for the first alternative, none of the plaintiffs (or of the six other putative class members identified by plaintiffs) sought relief from both the Board and PTAB in all three tax years.[4] However, in each of those years at least one plaintiff did fully exploit the two-step second alternative.

To prove their jurisdictional allegations, plaintiffs have focused on the experiences of plaintiffs Gilbert Bogen ("Bogen") and Deloris Axelrod ("Axelrod") before the Board and PTAB. They will be dealt with in turn.

As the following table reveals, PTAB did lower Bogen's assessment in 1978—but nearly two-thirds of that reduction[5] was restored by the higher 1979 assessment (imposed by local appraisers only a week after the PTAB action):

**Bogen Assessment**

| Year | Assessor | Board | PTAB |
|---|---|---|---|
| 1977 | — | No complaint | — |
| 1978 | $30,590 | $30,590 | $25,280 |
| 1979 | $28,760 | $28,760 | $28,750 |

Upset over that turn of events, Bogen wrote PTAB Chairman Albert Seppi for an explanation. Seppi responded (1) PTAB decisions are binding on Lake County only for the tax year involved and (2) Bogen's only recourse was to appeal to the Board and, if necessary, to PTAB. Bogen followed that recommended course without success (as the table shows, PTAB reduced the assessor's appraisal by a mere $10).

Axelrod encountered a different problem in her dealings with PTAB: its refusal to entertain constitutional objections to assessment practices in general. In rejecting her 1981 appeal, PTAB stated:

> The record also contains an extensive discussion of assessment practices in the township. However, the Property Tax Appeal Board may only make decisions with respect to specific properties appealed to it.[6]

This then is the factual backdrop against which defendants' motion to dismiss must itself be appraised. That analysis, though it requires discussion, does not pose serious legal problems.

### Motion To Dismiss

Defendants' motion seeks dismissal of the entire action—equitable and damage

---

**4.** This finding relies on official Board and PTAB records. This Court credits such evidence rather than the blanket and conclusory assertions of exhaustion contained in the identically-worded affidavits signed by three plaintiffs and the six other putative class members.

**5.** Plaintiffs' Mem. 5 says the assessment increase completely offset the reduction ordered by PTAB. That unsupported statement is be-lied by Board and PTAB records adduced by *both* sides.

**6.** This passage does not really confirm the constitutional nature of Axelrod's assault on the township's assessment system. Nevertheless, because defendants have not questioned the characterization of Axelrod's arguments, this Court will not do so either.

claims alike—under the Tax Injunction Act of 1937 (the "Act"), 28 U.S.C. § 1341, and comity principles as articulated in *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). Under the Act:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

In turn the comity doctrine bars federal district courts from granting damages in such state tax cases unless available state remedies are "plain, adequate and complete"—a formulation *McNary* (454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8) specifically equates with the "plain, speedy and efficient" test of the Act.[7]

 Defendants contend plaintiffs have failed to carry their burden [8] of proving the Complaint's jurisdictional allegation that "Illinois does not provide a plain, speedy and efficient remedy for wrongful tax assessments and levies." [9] Alternatively defendants seek dismissal because of plaintiffs' asserted failure to exhaust their administrative remedies in each tax year. Because defendants' first (and main) contention has merit, the exhaustion argument need not be reached.

Leaning heavily on the nine identical affidavits already referred to, plaintiffs advance a host of reasons why one of the two avenues for assessment relief—filing with the Board and then appealing to PTAB—falls short of the "plain, speedy and efficient" jurisdictional standard. They may fairly be summarized in these terms:

1. "Efficiency" is not served by the Board, for it encourages taxpayers to prepare their cases in an inefficient manner by advising them to (a) determine the assessments of three comparable houses on their block, (b) discuss their assessments (in light of such information) with their township assessor, (c) let a field appraiser into their homes whenever his unannounced visit occurs and (d) be able to discuss the market value of their property as of January 1 of the assessment year.

2. Taxpayers are not given enough time to present their complaints at the Board hearing.

3. PTAB's appeal form requires information layman taxpayers can obtain only with great difficulty.

4. PTAB hearings will not be continued for any reason without 30 days' prior written notice.

5. At the PTAB hearing the same appraisers who originally assessed the property testify on behalf of Lake County.

6. PTAB decisions are typically not forthcoming until after the taxpayer has paid the contested property tax.

7. PTAB will not entertain constitutional challenges to assessments.

8. Township appraisers generally nullify any relief obtained from PTAB by boosting assessments in subsequent tax years, forcing taxpayers to invoke state remedies each year.

All but the last two contentions are either frivolous or wholly unsupported. Accordingly the first six merit short shrift (in the sequence in which they have been presented):

---

7. Whether the Act standing alone would preclude such damage suits is still an open question. *McNary,* 454 U.S. at 107, 102 S.Ct. at 181. As *McNary* itself said (*id.* at 107 n. 4, 102 S.Ct. at 181 n. 4):

> The result we reach today was foreshadowed by our decision last Term in *Rosewell v. LaSalle National Bank,* 450 U.S. 503 [101 S.Ct. 1221, 67 L.Ed.2d 464] (1981).

*Rosewell,* involving an attack on Cook County tax assessment practices, sought injunctive relief and thus directly implicated the Act's "plain, speedy and efficient remedy" standard.

8. *Grafon,* 602 F.2d at 783.

9. In a February 2, 1982 unreported memorandum opinion and order this Court ruled that allegation—purely as a matter of pleading—comported with the notice pleading approach of federal practice and hence withstood attack under Rule 12(b)(6). Of course the current Rule 12(b)(1) motion evokes a totally different legal standard (see n. 2).

1. On their face the four Board recommendations are designed to facilitate expeditious resolution of assessment grievances. Given plaintiffs' failure to explain (let alone prove) how the recommendations caused any "ineffectual activity" [10] on their part, the argument simply dissolves.[11]

2. Again in surface terms, the 15-minute limitation on Board hearings actually enhances the capacity of the administrative remedy to be "speedy" and "efficient." Having already tendered the bulk of his or her evidence (the list of comparable properties) to the Board before the hearing, the taxpayer can readily present his or her claims within that time frame. Moreover, there is no basis for presupposing the Board's unwillingness to relax its 15-minute rule in any situation in which additional time is necessary (and plaintiffs have not pointed to even one such situation).

3. PTAB's appeal form is a straightforward document. Its only entry that conceivably calls for information about which a layman might arguably need help is that calling for the "legal description" of the property. As for that item, it takes little sophistication to know the taxpayer's readily available title insurance policy or deed contains the information. For the wholly unworldly taxpayer, legal assistance is always available (at worst, paid legal assistance, though in Lake County the odds seem to favor at least one next-door or across-the-street neighbor being a member of the profession available to give such minimal advice).

4. Plaintiffs do not cite a single instance where the 30-day advance notice provision foreclosed a taxpayer from PTAB review of his assessment claim. Furthermore, common sense suggests the rule is a reasonable procedure for assuring the PTAB appeal process as "speedy" and "efficient" for all taxpayers.

5. Lake County's use of the original appraisers as witnesses at PTAB's hearing seems eminently reasonable. At any rate the practice certainly doesn't necessitate "ineffectual activity" on the taxpayer's part or delay PTAB's ultimate decision.

6. None of the plaintiffs waited more than six months from the due date for final tax payments to receive their PTAB decisions. That length of time for exhaustion does not even approach the two-year delay *Rosewell*, 450 U.S. at 518–21, 101 S.Ct. at 1231–1233 found "falls [within] the boundary of a 'speedy' remedy."

While certainly more substantial, plaintiffs' remaining two arguments are also unconvincing. They too will be dealt with in turn.

As for PTAB's asserted refusal to hear constitutional claims, plaintiffs are of course correct in asserting the ability to press federal rights (including constitutional ones) as an indispensible ingredient of "a plain, speedy and efficient remedy." *Rosewell*, 450 U.S. at 514–15, 101 S.Ct. at 1229–1230. Despite the validity of that legal premise, plaintiffs' position is flawed on two levels.

First, plaintiffs' evidentiary foundation—the two-sentence excerpt from the PTAB decision received by Axelrod—is extremely shaky, for that cryptic passage is susceptible to an innocuous interpretation no less plausible than plaintiffs' reading: PTAB's refusal to confront Axelrod's constitutional assault on general assessment practices reflected its policy of not addressing constitutional claims that fail to implicate the specific property assessment at issue. Surely such an aversion to advisory opinions is unexceptionable. Because the record does

---

**10.** That was the term *Rosewell*, 450 U.S. at 518, 101 S.Ct. at 1231 used to describe the manifestation of a remedy that was not "efficient."

**11.** Admittedly a taxpayer might be inconvenienced by the field appraisers' claimed failure to give advance warning of his visit. But such inconvenience does not entail any "unnecessary expenditure of time or energy" (the other term used by *Rosewell*, 450 U.S. at 518, 101 S.Ct. at 1231) *in connection with the taxpayer's assessment challenge.* Nor does the asserted practice protract Board proceedings.

not disclose whether Axelrod's constitutional arguments did bear on her own assessment, neither interpretation can be viewed as more tenable. In the legal version of baseball's "ties go to the runner," the party that fails to satisfy its burden of proof (here plaintiffs) must lose.

But even were plaintiffs factually correct, they would not have proved the overall refund scheme is not "plain, speedy and efficient." It will be remembered that a taxpayer who fails to obtain relief from the Board has the option of presenting his or her assessment objections (1) to PTAB and then to the Circuit Court on appeal or (2) directly to the Circuit Court. So long as the Circuit Court is willing to consider a taxpayer's constitutional challenges in either procedural context, PTAB's refusal to do so does not taint the County's overall refund procedure under the "plain, speedy and efficient" formulation. Plaintiffs' conspicuous failure even to discuss the Circuit Court's role in this scheme [12] is hardly surprising, for that forum's receptiveness to such constitutional claims is well-established. *See, e.g., LaSalle National Bank v. County of Cook,* 57 Ill.2d 318, 324, 312 N.E.2d 252, 255–56 (1974); *Uretsky v. Baschen,* 47 Ill.App.3d 169, 175, 5 Ill.Dec. 552, 557, 361 N.E.2d 875, 880 (2d Dist.1977) ("The legal validity or constitutionality of a property tax assessment may be treated in tax objection proceedings in the Circuit Court . . . as well as in proceedings in the Circuit Court on administrative review of the State Property Tax Appeal Board's decision"). Accordingly, the state remedies available to County taxpayers afford sufficient opportunity to urge constitutional objections.

Plaintiffs' final contention—that the County's refund procedure is not "efficient" because it requires repetitive assessment challenges in succeeding years—is equally flawed. Its defects can be more readily perceived by dissecting the argument into its analytical components:

1. PTAB decisions are not binding on township assessors in later tax years.

2. Whenever PTAB reduces an assessment, those assessors generally raise it to its original discriminatory level for the next two years.[13]

Though concededly true, the first proposition—standing alone—does not establish the inefficiency of resorting to PTAB. On the contrary, because real estate values are constantly fluctuating, a tax system that simply carried forward prior reductions instead of taking a fresh look would not be "efficient." Only if appraisers systematically ignored the factual basis of PTAB decisions in their subsequent assessments could the PTAB remedy be termed not "efficient."[14] Thus plaintiffs must depend on the validity of their second premise.

---

12. Plaintiffs urge the scope of such judicial review is irrelevant because they need only prove that Board and PTAB proceedings are not "plain, speedy and efficient." Their exclusive focus on one of the two alternative refund remedies is assertedly justified because defendants' widely disseminated brochure advised taxpayers to file an appeal with PTAB rather than a tax objection with the Circuit Court. That argument is riddled with defects. First, defendants' recommendation was merely that. Indeed the pamphlet not only cautions taxpayers to consult an attorney before undertaking legal action but also emphasizes that it *"DOES NOT CONSTITUTE LEGAL ADVICE AND IS PUBLISHED ONLY FOR INFORMATIONAL PURPOSES."* Second, plaintiffs have effectively conceded the validity of the specific reasons given for that recommendation by using virtually identical language in their Notices and Consent Orders reflecting the settlements with the township defendants. Finally, Circuit Court review of refund claims is an integral part of *both* alternative remedies, for as already mentioned PTAB decisions can be appealed to the Circuit Court.

13. Like the argument as to constitutional claims, this argument fails to address the adequacy of the Circuit Court remedy. Nonetheless this Court will presume its applicability to both remedies, if only to highlight the evidentiary infirmities that transcend its narrow focus.

14. *Rosewell,* 450 U.S. at 518 n. 22, 101 S.Ct. at 1231 n. 22 held the fact a plaintiff obtained assessment relief from the Circuit Court of Cook County in 1977 only after four unsuccessful appeals to the Cook County Board of Appeals from 1974 to 1977 did not demonstrate the inefficiency of the state remedy. That was so because "neither the County Assessor nor the Board had yet had the benefit of a judicial

On that score plaintiffs offer two kinds of proof:

1. Each of the nine previously-mentioned affidavits asserts baldly:

That if the Property Tax Appeals Board did grant me relief for any particular years the assessor would reassess my property at a higher value thereby negating any relief that may have been granted.

2. Plaintiffs also proffer various documents showing the increase in Bogen's 1979 assessment erased about two-thirds of the PTAB-ordered reduction in his 1978 assessment.

Once more plaintiffs fall woefully short of meeting their burden.

As for the affidavits, this Court cannot accord them probative value. According to PTAB and Board records, five of the nine affiants [15] never appeared before the Board (or consequently PTAB) in *any* of the three tax years involved in this action. Three of the other four affiants (plaintiffs Ruth Lustig, Deloris Axelrod and Sherry Graditor) never received PTAB assessment reductions from the PTAB. Remaining affiant Gerald Brin ("Brin") obtained an assessment reduction in 1977. Neither side has furnished any Board or PTAB records that would conclusively reveal how the assessor in Brin's township responded to that PTAB determination. But those administrative records that have been adduced indicate Brin never even filed an assessment complaint in the following two years. Brin's failure to seek assessment relief in 1978 and 1979 strongly suggests either (1) Brin's lowered assessment was not in fact restored to the earlier level or (2) Brin viewed any assessment increase imposed as justified in market terms.[16]

Nor does the appraisers' treatment of Bogen after PTAB lowered his assessment manifest their general disregard for PTAB judgments.[17] It is clear from the record the local officials did not revert in knee-jerk fashion to their pre-relief assessment. They performed a new appraisal (as was their duty). Their re-examination confirmed the excessiveness of their original assessment (further substantiating their good faith) but also indicated the property had appreciated somewhat during 1978. Indeed their upward revision of Bogen's assessment must have comported with PTAB's own view, for PTAB (as well as the Board) left it essentially intact when Bogen appealed. Moreover, even if the appraisers had flouted PTAB's earlier determination (as the evidence does not show), a single instance of PTAB subversion could scarcely establish a widespread course of conduct among assessors. Only the latter sort of generic determination can defeat the applicability of the "plain, speedy and efficient" exception.

## Conclusion

Defendants' motion to dismiss is granted. This action is dismissed for want of subject matter jurisdiction.[18]

---

determination to *weigh* in their considerations" (emphasis added).

**15.** Each of those five affiants is a member of the putative class but not a named plaintiff.

**16.** This Court has credited those reasonable inferences over Brin's affidavit representation to the contrary for two reasons. First, in light of its nature and the proved falsity of many of its statements, the affidavit is exceedingly untrustworthy. Second, plaintiffs' memorandum makes no mention at all of Brin's post-relief assessment experience in discussing appraisers' general reactions to PTAB decisions.

**17.** Of course Bogen felt frustrated when two contemporaneously-reached assessments reached different results. But PTAB's number represented a value *as of a year earlier than the* contemporary figure reached by the local appraisers. And the text reflects facts demonstrating that was a real appraisal, not a rote reversion to a higher figure.

**18.** In light of this conclusion, plaintiffs and the *settling defendants (see n. 1) are invited to* submit their views to this Court as to the viability of their settlements.