Margaret COLEMAN, et al., Plaintiffs,

v.

Robert McLAREN, et al., Defendants.

No. 78 C 2117.

United States District Court,
N.D. Illinois, E.D.

Oct. 7, 1985.

Jack Uretsky, Hinsdale, Ronald L. Futterman, Hartunian, Futterman & Howard, Chtd., Marshall Patner, Chicago, Ill., for plaintiffs.

Roger P. Flahaven, Asst. Atty. Gen. of Ill., Chicago, Ill., James R. Schirott, Schirott & Associates, Itasca, Fred L. Foreman,

James C. Bakk, State's Atty. of Lake County, Waukegan, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Nine Lake and DuPage County taxpayers have brought this class action[1] under 42 U.S.C. § 1983 ("Section 1983") and the Fourteenth Amendment against officials and governmental bodies involved in administering the real estate tax assessment systems of all Illinois counties other than Cook.[2] Count I of the "Complaint" (plaintiffs' Second Amended and Supplemental Complaint, as amended November 3, 1983) seeks broad declaratory and injunctive relief against those systems as violative of the Illinois Constitution and the federal constitutional guaranties of due process and equal protection. Counts II, III and IV seek damages.

All defendants have now moved under Fed.R.Civ.P. ("Rules") 12(b)(1) and 12(h)(3) to dismiss this action for lack of subject matter jurisdiction. For the reasons stated in this memorandum opinion and order, those motions are granted.

### Facts

In light of the nature of the current motions,[3] this Court need not rehearse the Complaint's allegations (which are set out at length in Opinion I, 98 F.R.D. at 642–43).

Instead, to illuminate the issues raised by the motions, this opinion will first explore the state remedies available to taxpayers who wish to challenge their real estate tax assessments.

Township assessors initially appraise real estate in their respective jurisdictions. They must complete that task by June 1 of the "assessment year" (the actual tax bill will not arrive until the following year) (Ill.Rev.Stat. ch. 120, §§ 524, 525).[4] Each owner of reassessed real estate must receive a notice of his or her assessment (by newspaper publication and—in counties with fewer than 2 million inhabitants[5]—by mail) (Section 584). That notice must convey (*id.*):

1. the median level of assessment in the taxpayer's assessment district;

2. the immediately previous and current assessed value;

3. the relationship between the assessment and the tax bill;

4. the statutory mandate that each assessment must reflect 33⅓% of the real estate's fair market value; and

5. the availability of an appeal to the county's Board of Review ("Board") and the procedures and time limits for challenging the assessment.

Any dissatisfied taxpayer must first file an assessment complaint with his or her

---

1. On July 5, 1983 this Court (in "Opinion I," 98 F.R.D. 638) certified two plaintiff classes:
 (a) all overassessed Lake County taxpayers and
 (b) all overassessed DuPage County taxpayers.
 It denied certification of various defendant classes.

2. Surviving defendants are:
 (a) "County Defendants": DuPage and Lake Counties; DuPage and Lake County Boards of Review; certain members of the County Boards; the Supervisor of Assessments in each County; Downers Grove and West Deerfield Townships in DuPage and Lake Counties, respectively; and the assessor in each Township; and
 (b) "State Defendants": all Illinois Supreme Court Justices; the Illinois Property Tax Ap-

peal Board ("PTAB"); the PTAB Chairman; and the Attorney General of Illinois.

3. Defendants' Rule 12(b)(1) motions challenge the substance (not the sufficiency) of the Complaint's jurisdictional allegations. This Court may therefore entertain affidavits and other evidentiary materials, weighing any conflicting evidence (in contrast to Rule 56's summary judgment practice). In that respect plaintiffs have the burden of supporting their jurisdictional assertions with competent proof. *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979).

4. Further citations to chapter 120 will simply take the form "Section—."

5. That of course is the Illinois General Assembly's familiar technique for applying a statutory provision to the 101 Illinois counties other than Cook (in this case, the separate provision is in Section 585).

county's Board (Section 589).[6] Shortly thereafter the taxpayer is afforded a hearing, after which Board notifies the taxpayer in writing of its decision.

If the taxpayer is dissatisfied with Board's disposition of his or her complaint, he or she may pursue one of two mutually exclusive remedies, each of which affords de novo consideration. One option is an appeal to PTAB (Section 592.1). Any adverse PTAB decision is subject to review in the appropriate Illinois Circuit Court (Section 592.4) and then via the regular judicial and appellate procedures (Ill.Rev.Stat. ch. 110, ¶ 3–112). Alternatively the taxpayer may pay the contested tax under protest and then file a tax objection when the County Collector files an application for judgment before the Circuit Court (Sections 675, 716). Any adverse court ruling is subject to appeal (Section 675) and even possible review by the United States Supreme Court (28 U.S.C. § 1257).

### Motions To Dismiss

■ Defendants' motions seek dismissal of this entire action—equitable and damages claims alike—under both the Tax Injunction Act of 1937 (the "Act," 28 U.S.C. § 1341) and the principles articulated in *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). In literal terms the Act addresses only injunctive relief:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient reme-

dy may be had in the courts of such State.

But *McNary*'s comity doctrine bars federal district courts from granting damages under Section 1983 as well, wherever available state remedies are "plain, adequate and complete"—a formulation *McNary*, 454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8 explicitly equates with the Act's "plain, speedy and efficient" test.

Defendants contend plaintiffs have failed to carry their burden of proving the Complaint's jurisdictional allegations (Complaint ¶¶ I–13 to I–16) that Illinois' remedies are not "plain, speedy and efficient." [7] Alternatively the Lake County Defendants urge res judicata forecloses consideration of plaintiffs' claims.

Plaintiffs respond with a scattershot attack on the inadequacy of Illinois remedies in "plain, speedy and efficient" terms. This opinion must perforce deal with each of those contentions in turn. Because the following analysis demonstrates the onslaughts fail both individually and collectively, it will be unnecessary to reach Lake County's res judicata argument.

### Claimed Absence of Any Remedy

■ Plaintiffs first focus on Illinois law's failure to afford injunctive relief to remedy the alleged non-uniform assessment patterns.[8] Essentially plaintiffs contend only general injunctive relief can remedy their claims, so that Illinois procedures constitute no remedy at all. That argument fails for two reasons.

---

6. Before initiating that formal administrative review process, the taxpayer may attempt to express his or her grievances informally to his or her Township Assessor or County Supervisor of Assessments, each of whom is authorized to correct assessments while in possession of the assessment books (Sections 527, 576). Failure to pursue that remedy does not foreclose further administrative review by Board.

7. This Court's October 4, 1983 memorandum opinion and order ("Opinion II," 572 F.Supp. 178) found plaintiffs' allegations—purely as a matter of pleading—comported with the notice pleading approach of federal practice and thus

withstood attack under Rule 12(b)(6). Of course the current Rule 12(b)(1) motions evoke a totally different—and more stringent—legal standard (see n. 3).

8. Illinois courts refuse to grant injunctive relief where an adequate legal remedy exists, and they consider the two statutory procedures for contesting assessments adequate. *LaGrange State Bank # 1713 v. DuPage County Board of Review*, 79 Ill.App.3d 474, 484, 35 Ill.Dec. 42, 50, 398 N.E.2d 992, 1000 (2d Dist.1979). PTAB confirms that a taxpayer's appeal will affect only the assessment of his or her own property (Pl.Ex. K).

First, the absence of an injunctive provision does not in itself prove the overall remedy scheme is not "plain, speedy and efficient." As *California v. Grace Brethren Church*, 457 U.S. 393, 416, 102 S.Ct. 2498, 2512, 73 L.Ed.2d 93 (1982) noted:

Finally, we must keep in mind that at the time that it passed the Tax Injunction Act, Congress was well aware that refund procedures were the sole remedy in many States for unlawfully collected taxes.

Nonetheless *Grace Brethren, id.* at 415–16, 102 S.Ct. at 2511–12 held a state remedy can satisfy the "plain, speedy and efficient" test even though state courts refuse injunctive relief to restrain tax collections.[9]

■ Second, plaintiffs' complaint really boils down to the idea an injunctive remedy would be *better* than the existing Illinois scheme. But the Act does not force a state to provide the best possible remedy—it merely requires that whatever remedy is adopted be "plain, speedy and efficient." *Miller v. Bauer*, 517 F.2d 27, 32 (7th Cir. 1975).

Count I complains of the lack of state-wide assessment uniformity resulting from a "multi-tier assessment pattern." True enough, Illinois law does not permit an individual taxpayer to launch a system-wide attack on assertedly non-uniform assessment "patterns." But after all, that is not much different in concept from the jurisprudential rules that have come to be grouped under the rubric of "standing." What is essential to the concept of "remedy," and what is true in Illinois, is that each individual taxpayer has the right to contest his or her *own* assessment on the ground comparable properties were assessed at lower debasement fractions.[10] Though that system, under which each overassessed taxpayer fights his or her own battle, might be criticized (shortsightedly) as a piecemeal approach,[11] it certainly affords a right to relief. It must be deemed a "remedy" within the meaning of the Act.

Plaintiffs advance two additional "no remedy" arguments:

1. Each Board provides a "meaningless" hearing because (a) Boards refuse to raise the assessments on a group of apparently underassessed properties in response to a single taxpayer's complaint of overassessment and (b) Boards give "very little" consideration to assessment values comparing dissimilar properties.

2. PTAB might actually raise the assessment of a taxpayer who appeals a Board's decision.

Both assertions merit short shrift.

On the notion of "meaningless" hearings, the first prong of plaintiffs' attack simply recasts at the administrative level their already-rejected objection to the absence of a general injunctive remedy in Illinois courts. Once again, plaintiffs cannot assert a right to the best possible remedy available (even assuming, arguendo, plaintiffs' proposed structure would be better—scarcely an established premise). *Miller*, 517 F.2d at 32. As long as Boards provide relief to individual taxpayers whose property has been overassessed, their hearings must be deemed "meaningful."[12]

---

**9.** Indeed any other conclusion would pose an odd contradiction to the Act itself. As *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 527–28, 101 S.Ct. 1221, 1236–37, 67 L.Ed.2d 464 (1981) makes clear, the main reason for the Act's prohibition on enjoining state tax collections is the disruptive effect such injunctions would have on the ability of local governments to function—for every governmental body depends on the predictability of its income flow. If it is permissible for Congress to have made that policy judgment, can it be less so for a state legislature?

**10.** "Debasement fraction" simply means the ratio of the sum of the tax assessments of all real estate in the relevant jurisdiction to the sum of the fair market values of that real estate.

**11.** Such a parcel-by-parcel approach is really inherent in real estate tax assessment systems. Even if an injunction could be obtained prohibiting the alleged multi-tier assessment patterns, it would still require a parcel-by-parcel comparison of the assessments levied to determine the taxing authorities' compliance with that injunction.

**12.** Lake County Board member Ellen Furtkamp testified that complaints of widespread underassessment would lead that Board to request the

Plaintiffs' second prong misperceives the nature of Boards' refusals to consider assessment evidence comparing dissimilar properties. Boards, like any other adjudicatory bodies, are not compelled to consider irrelevant evidence—and the value of dissimilar properties may fairly be viewed as presumptively irrelevant. But where plaintiff Hamer in fact proved the relevance of assessments of dissimilar properties, the Lake County Board granted an assessment reduction (Furtkamp Dep. II–116, reproduced in Lake County Def.R.Mem. 13). All plaintiffs really demonstrate is the tautological proposition that the "meaningfulness" of the hearing provided by a Board depends in part on a taxpayer's own efforts.

■ As for plaintiffs' complaint that PTAB might raise an assessment on a taxpayer's appeal, Section 592.2 does provide "All appeals shall be considered de novo." PTAB thus need not accept a prior assessment valuation if it is found too low. But the concept of "remedy" surely does not embrace a taxpayer's right to an unfairly *low* assessment. Plaintiffs themselves concede PTAB lowers assessments in proper cases (Pl.Ex. P–2). This Court rejects any notion that a taxpayer's assurance of a *fair* assessment—up or down—somehow renders an appeal to PTAB an illusory remedy.

In sum, all plaintiffs' arguments that Illinois provides no remedy are without merit. With those out of the way, this opinion goes on to consider the real issue: whether the procedural mechanism Illinois provides for contesting real estate tax assessments is indeed a "plain, speedy and efficient" remedy.[13]

Assessor to review the assessments the next year (Pl.Ex. G–2 at 52–53).

**13.** DuPage Defendants also assert plaintiffs can maintain a Section 1983 action in state court and thus obtain a "remedy" in state court equivalent to the remedies available in federal court. Plaintiffs dispute their ability to prosecute a Section 1983 action in state court. Because this Court finds Illinois' statutory procedures sufficiently "plain, speedy and efficient" to bar jurisdiction here, it need not decide that issue. Cf.

*"Plain, Speedy and Efficient" Remedy*

■ *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 516, 522, 101 S.Ct. 1221, 1230–31, 1233–34, 67 L.Ed.2d 464 (1981) teaches the Act's "plain, speedy and efficient" test focuses on the *procedural* sufficiency of a state's remedy.[14] Each of those three terms has a different content in procedural terms, and they will therefore be considered separately.

### 1. "Plain"

*Rosewell*, 450 U.S. at 516–17, 101 S.Ct. at 1230–31 concluded the Act's usage of the term "plain" required a plaintiff to show the challenged procedure is "uncertain or otherwise unclear." On that score plaintiffs advance several bases for labeling Illinois procedures in that way.

*(a) Judicial Doctrine of "Constructive Fraud"*

*People v. International Business Machines Corp.*, 89 Ill.2d 287, 293, 59 Ill.Dec. 923, 926–27, 432 N.E.2d 867, 870–71 (1982) (citations omitted) reconfirmed that Illinois courts will review a county assessor's property valuation assessment only upon a showing of fraud or what those courts term "constructive fraud":

Assessments that are disproportionately higher than those for similar property or assessments that are based on the assessor's own private opinion showing a lack of knowledge or a lack of honest judgment are indicative of constructive fraud.... Similarly, over-valuation may be so excessive, under some circumstances, as to justify the conclusion that it was not honestly made and, therefore, is constructively fraudulent.

*Rosewell*, 450 U.S. at 511 n. 14, 101 S.Ct. at 1228 n. 14.

**14.** *Rosewell* involved an attack on Cook County's tax assessment practices. As this Court noted in Opinion II, 572 F.Supp. at 181, *Rosewell* held only that the plaintiff there had not *proved* the absence of "plain, speedy and efficient" Illinois remedies. *Rosewell* thus does not foreclose the inquiry in this case.

Any determination of constructive fraud "depends upon the facts and circumstances of each particular case" (*id.* at 293, 59 Ill.Dec. at 927, 432 N.E.2d at 871).

█ According to plaintiffs, that judicial approach renders Illinois judicial remedies for improper assessment valuations "uncertain" for two reasons:

1. Inherently vague and unpredictable results are generated by application of the constructive fraud doctrine.

2. Illinois courts are willing to assess property values in eminent domain proceedings, yet unwilling to reassess property values in real estate tax controversies.

Both those reasons completely misperceive the nature of the inquiry mandated by the Act. *Rosewell,* 450 U.S. at 516, 522, 101 S.Ct. at 1230, 1233–34 requires evaluation of the *procedural* sufficiency of Illinois' remedies, while plaintiffs complain about the *substantive* doctrines applied by Illinois courts.

Thus there is no way in which the Illinois courts' application of the constructive fraud doctrine may be said to render "uncertain" the procedural nature of the Illinois remedy. Any degree of so-called uncertainty stemming from the application of a general standard to varying facts simply reflects the inherent nature of the common-law process. Nothing in the Act requires a state's remedy to guarantee identical results—it simply mandates a state to provide a "plain" procedure. In that sense the procedural method a taxpayer must follow to acquire judicial review of a tax assessment would remain the same regardless of the use of the constructive fraud doctrine.

Eliminating that doctrine would not make the remedy any more "plain." [15]

Nor should this Court's rejection of plaintiffs' position on those narrow grounds—narrow only because that is all the Act and *Rosewell* call for—be misperceived as an endorsement of plaintiffs' substantive contentions. It is not. What plaintiffs really cavil at is the absence of a full-blown clean-slate review of the valuation question at the judicial level. But it is far too late in the day of administrative law for that notion to be persuasive. Where there has been a factual determination at an administrative level, courts regularly accord a degree of respect to that determination rather than making a fresh reexamination of the issue—whether by applying a "clear and convincing evidence" test, a "substantial evidence" criterion, a "plain error" standard or any other measure of limited review. "Constructive fraud" is no different in kind from any other application of the same concept of limited judicial review, and whether it may be slightly different in degree is of no moment. Nothing in the Act or *Rosewell,* or in legal principles in general, calls for a stricter scrutiny of the Illinois procedures *or* their substance.

Similarly, the fact that Illinois courts determine property values in eminent domain proceedings does not mean their different approach to tax cases (use of the constructive fraud doctrine rather than de novo valuations) makes the latter remedy "uncertain." There is certainly a rational basis (in the sense just discussed in the preceding paragraph, as well as perhaps in others) for such difference in treatment. And in *Rosewell* terms, any requirement that courts assess a property's value anew

---

**15.** Such "proof" as plaintiffs offer to support their argument falls woefully short of meeting their burden:

1. Defendant McLaren, an Assistant State's Attorney for DuPage County, admitted in response to interrogatories that he adopted for his own purposes a bright-line test of "200% of value" as evidence of constructive fraud (Pl.Ex. Q).

2. Lake County Defendants admitted the constructive fraud doctrine led to varying results (Pl.Ex. R).

3. DuPage County's Township Assessor admitted in testimony before PTAB his property valuations sometimes vary from actual sales prices (Pl.Ex. S–1).

These submissions simply reflect differing substantive results. Plaintiffs have introduced no evidence to suggest the procedural method a taxpayer seeking assessment relief must follow is in any way uncertain.

would not change the procedural method by which a taxpayer reaches those courts. Once again an elimination of the constructive fraud doctrine would change the substantive inquiry of Illinois courts but would not make the procedural chain any more "plain."

*(b) Burden of Seeking Upward Tax Revisions*

*Hillsborough v. Cromwell*, 326 U.S. 620, 623, 66 S.Ct. 445, 448, 90 L.Ed. 358 (1946) said the Equal Protection Clause precludes a state from constitutionally "impos[ing] on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class." Plaintiffs take the bizarre stance that they (unconstitutionally) bear the burden of seeking upward revisions of the taxes of underassessed taxpayers but that Illinois law prohibits a taxpayer from bringing suit to collect another taxpayer's taxes. That alleged quirk in Illinois law is somehow said to make an overassessed taxpayer's remedy less "plain."

■ Again plaintiffs' argument completely ignores the nature of the Illinois remedy structure. No overassessed Illinois taxpayer has to bring suit to increase other taxpayers' taxes to obtain relief. He or she may either appeal to PTAB (Section 592.1) or pay his or her tax under protest and receive a hearing in Circuit Court (Sections 675, 716). Absence of a mechanism to force collection of other taxpayers' taxes does not make a taxpayer's remedy to reduce his or her own taxes any less certain.

It may once more be worthwhile to cut through the rhetoric of plaintiffs' presentation to examine the issues in terms they have not posed. No taxpayer has standing to complain of the fairness or unfairness of what other taxpayers do, except perhaps on the idea that a systematic raid on the treasury by others subjects the taxpayer himself or herself to an unfair share of the burden. But so long as every taxpayer has the right to assure a fair assessment of his or her own property, the net effect of taxpayers' aggregate efforts to obtain that result is a fair overall tax base. It is not part of the "plain" remedy concept that any individual must be entitled—or must be forced—to launch a broadside attack on the entire system. And that is fatal to this branch of plaintiffs' argument.

*(c) Judicial Review*

Plaintiffs next contend they cannot obtain judicial review of Board actions. That is nonsense (other than in the limited sense of de novo review, a position this opinion has already rejected). It has been explained more than once that taxpayers may obtain judicial review of Board actions in either of two ways:

1. Sections 675 and 716 allow the payment of taxes under protest, followed by a contest of the County Collector's application for judgment before the Circuit Court.

2. Ill.Rev.Stat. ch. 110, ¶ 3–112 allows appeals from a PTAB ruling.

*(d) Discovery*

Next in the line of straws plaintiffs seek to grasp is one complaining of uncertainty as to the availability of discovery in tax objection proceedings.[16] That too, they say, prevents the entire Illinois scheme from being "plain."

■ At the risk of repetition, *Rosewell*, 450 U.S. at 516–17, 101 S.Ct. at 1230–31 requires an analysis only of the *procedural* sufficiency of Illinois' refund scheme. Any uncertainty as to whether an Illinois court will rule favorably on a discovery request does not make "unclear" the procedural manner in which taxpayers must pursue their tax objections in that court. Yet again plaintiffs offer a quibble, focusing on uncertain results rather than uncertain procedures.

---

**16.** DuPage County Defendants admit "discovery is generally not available in tax objection proceedings" (Pl. DuPage Mem.Ex. J). Though that is not wholly clear from the record (apparently some state courts do and some do not permit discovery), this opinion makes the assumption most favorable to plaintiffs.

### (e) Underassessed Judges

Finally plaintiffs make an even less tenable claim—this one based on the theory that underassessed DuPage County judges have decided real estate tax objection cases. Plaintiffs imply those judges' decisions reflect personal biases and thereby render the Illinois remedies uncertain.

Even apart from the question whether plaintiffs' premise (if proved) would support their conclusion, they have offered no evidence whatever to support even a reasonable inference—let alone to prove—DuPage County judges' decisions turn on personal biases. This Court refuses to infer such biases from mere innuendos and therefore rejects plaintiffs' contention.

\* \* \*

None of plaintiffs' arguments (singly or together) suffices to show Illinois' remedy is in any way "uncertain." Accordingly this Court finds the Illinois remedy to be "plain."

### 2. "Speedy"

*Rosewell*, 450 U.S. at 518, 101 S.Ct. at 1232 stressed:

"Speedy" is perforce a relative concept, and we must assess the ... delay against the usual time for similar litigation.

*Rosewell, id.* at 521, 101 S.Ct. at 1233 then found a two-year delay did not "fall[ ] outside the boundary of a 'speedy' remedy."

Plaintiffs say Illinois does not provide a "speedy" remedy because:

1. Adjudication of individual tax objections might require years of litigation, based on plaintiffs' own past experiences in Illinois courts:

(a) Hamers—the named Lake County plaintiffs—claim to have waited in the past as long as 17 years before receiving a refund (Pl.Ex. C, Hamer Aff. ¶ 2).

(b) DuPage County plaintiffs claim all their post-1975 tax objections are still pending (Pl.Ex. KK).

2. Any county's appeal from a PTAB decision favorable to a taxpayer might delay that taxpayer's refund.

As has uniformly been the case to this point, neither reason withstands scrutiny.

Defendants challenge the factual sufficiency of plaintiffs' literal attack on "speediness" of the remedy. According to defendants:

1. Lake County's Circuit Court disposes of the overwhelming majority of tax objection cases in fewer than two years (Lake County Def.Ex. B).

2. DuPage County's Circuit Court has disposed of all but one tax objection case, excluding plaintiffs' cases [17] (DuPage County Def.Ex. B, Elsner Aff. ¶ 3).

■ *Hamer v. Anderson*, 594 F.Supp. 561, 564 & n. 3 (N.D.Ill.1984) [18] correctly says (though, it turns out, for the wrong reason) the five-year span before this action was filed is the relevant time period over which this Court must assess the speediness of Illinois' remedy.[19] As to that

---

**17.** There is a very good reason plaintiffs' post-1976 DuPage County tax objections still remain unresolved (Pl.Ex. KK): There is a Circuit Court order staying those proceedings pending the outcome of this case (Pl.Ex. NN). If as plaintiffs claim (Mem. 23) that order was obtained ex parte, they have not explained why they did not move to vacate it to get the proceedings moving again. But because in any event this case apparently subsumes those objections, plaintiffs can scarcely object to a state court's deferral to this Court's ruling, when plaintiffs themselves elected to attempt to pursue a federal remedy. That kind of onslaught in "speedy" remedy terms would represent impermissible bootstrap-lifting.

**18.** Yes, Virginia, that Hamer is our Hamer too.

**19.** *Hamer, id.* at 564 n. 3 concluded earlier claims were barred under the relevant statute of limitations. It relied on *Beard v. Robinson*, 563 F.2d 331, 334 (7th Cir.1977) to adopt the five-year limitation period under Ill.Rev.Stat. ch. 110, ¶ 13–205. Since then *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) has rejected the underpinnings of the *Beard* analysis for Section 1983 cases. Nonetheless the analysis mandated by *Wilson* leads to the same ultimate destination *Beard* had reached, though via a very different route. *Shorters v. City of Chicago*, 617 F.Supp. 661, 665–66 (N.D. Ill.1985).

five-year period, Lake County Defendants have presented this evidence:

1. Lake County resolved Hamers' cases in an average time period of less than two years (Lake County Def.Group Ex. D).[20]

2. Lake County has disposed of most other tax objection cases in fewer than two years (Lake County Def.Ex. B).[21]

3. Hamers' 1978 and 1979 tax objections, which the parties tried in 1985, were not filed until late 1984 (Lake County R.Mem.Ex. C, D).

And as already said, only one DuPage tax objection case—other than plaintiffs' (see n. 17)—is even pending (DuPage Def.Ex. B, Elsner Aff. ¶ 3).

Even though *Rosewell* characterized "speedy" as a "relative concept," it is noteworthy that the two-year period found to

satisfy that concept in that case has really been met here as well. Plaintiffs have offered no evidence to controvert Lake County Defendants' showing in that respect.[22] Nor have plaintiffs met the DuPage factual presentation.

■ This Court holds the times for disposition of tax objections shown by the record here are "speedy" within the Act's meaning. Consequently plaintiffs' first theory has not met their burden of establishing jurisdictional facts to prove the Illinois remedy is non-"speedy."

■ Plaintiffs' other "speediness" argument is also fatally flawed. Three short responses as to County appeals from pro-taxpayer PTAB rulings reveal those flaws:[23]

1. Lake County R.Mem.Ex. F (Rozenberg Aug. 15, 1985 Aff.) reveals the

---

**20.** Hamers' alleged 17-year delay (a "worst case" presentation) refers to a 1961 tax objection that assertedly led to a 1978 refund. That experience may have impelled Hamers to become crusaders against the system, but it is legally irrelevant to the resolution of this case. This Court must after all decide whether Illinois *currently* provides a "speedy" remedy. To pose a more extreme example, if a state were to have provided no remedy at all in the past, but its legislature were now to have enacted a wholly adequate current remedy, the state's historical delinquency would not permit taxpayers to obtain relief against its current system under the Act. And where the example complained of by taxpayers is barred by the statute of limitations, that forecloses both injunctive relief and damages.

**21.** Lake County Def.Ex. C (Rozenberg Aff.) offers proof most of the remaining tax objection cases involve highly technical tax rate objections, which necessarily (and reasonably) require lengthier disposition times.

**22.** Plaintiffs do point out some Lake County cases have defied resolution for more than two years (Pl.Ex. HH; Lake County Def.Ex. C). But it goes without saying some cases require more time for disposition than others: This lawsuit itself has endured seven years of squabbling before this Court has been able to confront a threshold jurisdictional question. Justice Stevens, writing for the Court in *Rosewell*, 450 U.S. at 519–20, 101 S.Ct. at 1232, drew on the statistics in the Cook County Circuit Court and this District Court (matters with which he was already familiar based on his experience as a

practitioner here) to emphasize the two-year "customary delay" (*id.* at 510, 101 S.Ct. at 1227) for tax refunds compared favorably with the median disposition times for lawsuits—and of course that meant a substantial number took much more time than the median. "Speedy" is simply not a function of the outside time required for disposition. Similarly, this Court declines to hold that the Act requires the state remedy to dispose of all (or even the vast majority of) tax cases within two years to be "speedy."

**23.** Two related contentions by plaintiffs hardly require discussion:

1. They point to "curative acts" by the Illinois General Assembly that purportedly overrule PTAB decisions in favor of taxpayers. But they offer no evidence (or argument) that legislative action affecting PTAB decisions deprives taxpayers of an otherwise "speedy" remedy. Even if a State's Attorney assisted in obtaining passage of such a bill (Pl.Ex. PP), that does not render the Illinois remedy less "speedy."

2. True enough, a taxpayer who resorts to Illinois' administrative remedy must proceed through a four-step process (Board–PTAB–Circuit Court-Appellate Court). But plaintiffs tender no proof that a taxpayer who pursues that administrative remedy receives a less "speedy" remedy than a taxpayer who opts for the tax-objection procedure. More importantly, plaintiffs have wholly ignored the existence of the Circuit Court remedy. Because any taxpayer can just as well follow that alternative refund route, any alleged (but unproved) drawback of the administrative remedy becomes irrelevant.

Lake County Board has appealed PTAB decisions only four times in the past eight years—and the Board prevailed in all four cases. That evidence is uncontroverted. In purely factual terms, then, Lake County's Board appeals from adverse PTAB decisions have not prevented PTAB from providing "speedy" relief to Lake County taxpayers.

2. DuPage County Def.Ex. C (Marack Aff. ¶ 5) says 78% of complaining DuPage County taxpayers received an assessment reduction from DuPage's Board in 1983. Plaintiffs have offered nothing to support their bald assertion DuPage County prolongs the administrative proceeding by prosecuting meritless appeals. It cannot be *assumed* DuPage County's Board "nullifies" PTAB decisions favorable to DuPage County taxpayers. This Court's earlier observation in *Axelrod v. Earhart*, 565 F.Supp. 549, 554 (N.D.Ill.1983) holds true here as well:

In the legal version of baseball's "ties go to the runner," the party that fails to satisfy its burden of proof (here plaintiff) must lose.

3. In any event this Court has already determined the Illinois *courts* provide a "speedy" remedy in tax objection proceedings. Nothing in the Act (or in *Rosewell*'s gloss on the Act's language) requires that *each* Illinois remedy provide "speedy" relief. So long as plaintiffs can pursue a "speedy" remedy in Illinois courts, they cannot object to the length of time required for an administrative decision (though they have failed on that issue as well).

\* \* \* \* \* \*

On the "speedy" standard, as on the "plain" requirement, plaintiffs have swung and missed. It only remains to look at what plaintiffs have done with the Act's third pitch: whether the Illinois remedy is "efficient."

### 3. "Efficient"

*Rosewell*, 450 U.S. at 518, 101 S.Ct. at 1231 concluded an inefficient remedy manifests itself in "ineffectual activity or an unnecessary expenditure of time or ener-gy." Plaintiffs proffer a multitude of claims that Illinois' two alternative remedies require such ineffectual activity.

### (a) Multi-Tier Administrative Remedy

Plaintiffs first urge the multi-tier administrative remedy, which requires an objecting taxpayer to proceed from Board to PTAB before reaching the judicial process, lacks efficiency simply because it includes more than one level of action. That conclusory assertion, unsupported by any evidence, requires only a brief response:

1. *Grace Brethren*, 457 U.S. at 416 n. 35, 102 S.Ct. at 2512 n. 35 said:

Certainly, nothing in the legislative history of the Act suggests that requiring a taxpayer to seek a refund first through administrative procedures makes the state remedy less than "plain, speedy and efficient." Moreover, the legislative history of the Johnson Act, after which the Tax Injunction Act was modeled, see n. 22, *supra*, makes clear congressional intent that a state remedy is "plain, speedy and efficient" even though a utility must proceed first through administrative and then judicial proceedings in order to challenge the constitutionality of utility rates. See S.Rep. No. 125, 73d Cong., 1st Sess., 2–3 (1933).

Certainly the mere existence of a layered administrative/judicial process does not by itself render the Illinois remedy less "efficient."

2. As indicated earlier, DuPage Def.Ex. C, Marack Aff. ¶ 5 states DuPage's Board resolves 78% of its complaints in favor of the taxpayer at the first administrative level. Lake County Def.Ex. A, Nutgrass Aff. sets out similar—though somewhat lower—percentages, suggesting most complaining taxpayers achieve relief without having to pursue every step of the administrative remedy. Any process that disposes of such a high level of complaints at the initial stage must be deemed an "effective" remedy.

Plaintiffs tender no evidence of their own to suggest a contrary conclusion. Absent any explanation or proof of how or why the existence of a multi-tiered remedy creates any "ineffectual activity," plaintiffs' argument simply fails.[24]

### (b) "Meaningless" Board Hearings

Plaintiffs next argue Board hearings provide a "meaningless" remedy—and thus create "ineffectual activity"—because:

1. Taxpayers cannot obtain "review" of a Board hearing.

2. Boards operate without "standards."

As has invariably been the case to this point, both arguments lack any persuasiveness.

■ Plaintiffs' claimed lack of "review" is really a complaint that PTAB—pursuant to Section 592.2—conducts a "de novo" review (apparently plaintiffs would prefer a more limited "supported by substantial evidence" review standard). That is really puzzling. If a taxpayer is happy with the Board's ruling, the procedure simply ends there. If the taxpayer is not happy, he or she would appear to be better off with the PTAB attaching *no* weight to the Board ruling than by having to overcome some added burden of persuasion. Even were that not the case, of course, a taxpayer who prefers direct judicial review of a Board's decision may pursue that course of action under Sections 675 and 716.

■ Plaintiffs' criticism of Board's lack of an appropriate "standard" to review tax assessments also fails as an attack in "effi-ciency" terms. Here a bit more discussion is required.

Plaintiffs first complain a Board does not identify the type of evidence it considers when it reviews an assessment valuation. They say a Board considers a taxpayer's evidence only if that evidence supports the Township Assessor's valuation or reflects a recent sale. Plaintiffs' own evidentiary submissions, however, contradict that assertion. Pl.Ex. F (Furtkamp Dep. 78) reveals a Board does not presume the Township Assessor's valuation is correct. Although a Board might consider a recent sale "the best evidence of value" (Pl.Ex. WW, Furtkamp Dep. 32), it will nevertheless consider evidence of comparable property assessments or a study of depreciated replacement values (*id.* at 32–33). Evidence of a recent sale simply constitutes "part of the whole package of evidence" (Pl.Ex. VV, Furtkamp Dep. 113). Moreover, Lake County's "Board of Review Suggestions To Assist the Taxpayer" (the "Board Suggestions," Pl.Ex.AAA), which outline both the procedures for contesting tax assessments and the type of evidence a taxpayer should provide at the Board hearing, specify a taxpayer may present evidence of comparable properties assessed lower than his or her property. Plaintiffs have made no showing the Board disregards such evidence when presented.[25] Again plaintiffs have not met their burden, this time by failing to prove the Illinois remedy is not "efficient."

Next plaintiffs argue they cannot effectively counter an allegedly erroneous assessment because Boards do not employ a "set standard" for weighing evidence.

---

**24.** Here too plaintiffs have conspicuously ignored the existence of the Circuit Court remedy as an alternative to the administrative procedure. Any taxpayer who wants to avoid an administrative adjudication can do so.

**25.** Plaintiffs argue the Rudsill hearing (see Pl.Ex. AAA) demonstrates Boards do not consider evidence of the assessed values of comparable properties. But those documents lend themselves to the equally plausible—and wholly innocuous—interpretation that the Board considered the evidence of comparable properties but found it unpersuasive. Plaintiffs offer no evidence to prove a deliberate disregard of the Rudsills' submissions. Indeed, the allegedly "comparable" properties actually appear smaller than the Rudsill property and lack the stone veneer of the Rudsill house. Thus the Board could properly have found the Rudsills' evidence unconvincing. Surely the mere fact a Board disagrees with a complaining taxpayer does not render that Board's hearings "meaningless." And as with plaintiffs' other evidentiary submissions, no single instance suggests any systemic deficiencies. See the later text discussion under "Relitigation."

Here too plaintiffs' own evidentiary submissions defeat them. As already noted, the Board Suggestions outline the taxpayer's basic evidentiary responsibilities. More importantly, common sense suggests the lack of an articulated standard does not render a Board hearing "meaningless," as long as the Board fairly considers all the evidence submitted. DuPage Board Chairman Kaelin testified in one tax proceeding (Pl.Ex. YY at 175):

Q. Did you have a standard, after the evidence had been presented, for weighing the evidence to decide which—to decide whether the complaint should be affirmed or changed?

A. I would say not a standard, but we just took whatever has been presented and consider that versus the evidence of the assessor.

There was no set standard. We would do it.

Under the circumstances, the lack of a "set standard" in such an informal proceeding does not render a Board's hearing "meaningless" and thus not "efficient."

*(c) Costs*

Section 592.4 provides in part:

The Property Tax Appeal Board shall certify the record of its proceedings only if the taxpayer or other entity seeking review pursuant to the Administrative Review Law pays to it for each page of legal size or smaller, the sum of $.75 per page for testimony taken before the Board and $.25 per page for all other matters contained in the record and for any page larger than legal size the sum of $1, except that these charges may be waived when the Board is satisfied that the aggrieved party cannot afford to pay such charges. There shall be no charge to the taxpayer or other entity for certification by the Property Tax Appeal Board

of any pages of the record which are furnished for inclusion in the record by the taxpayer or other entity seeking such review.

Plaintiffs contend the Illinois remedy is rendered inefficient by:

1. PTAB's "exorbitant" certification charges and

2. PTAB's refusal to award costs to a successful taxpayer.[26]

Both arguments wholly miss the point that *Rosewell*, 450 U.S. at 518, 101 S.Ct. at 1231 focuses on "an unnecessary expenditure of time or energy." Expenditure of money simply falls outside that prohibition of "ineffectual activity." *Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128, 133–34 (7th Cir.1981) (citations omitted) clarifies *Rosewell*'s emphasis on the procedural aspects of a state's remedy (with the quotation adapted to this case):

As [*Rosewell's*] reference [to "unusual hardship"] was to the procedural elements of the remedy, it does not apply to [plaintiffs'] complaint that compliance will cost [them] money. As in *Rosewell*, [plaintiffs'] complaint addresses "a more substantive concern.... The procedural method for correction of [their] tax bill remains the same," whether [plaintiffs] must incur additional expenses or not.... An economic burden does not affect [plaintiffs'] ability to obtain a "full hearing and judicial determination" of [their] claims.

 Plaintiffs' ability to recover costs would not save them any "time or energy" or reduce the quantum of activity required to prosecute a PTAB appeal. Their claim that the costs of pursuing the Illinois remedy render the Illinois procedures inefficient thus miss the mark entirely.

---

**26.** Plaintiffs also say PTAB uses "personal unwritten standards"—in violation of plaintiffs' due process rights—to waive costs. That contention raises a substantive constitutional challenge to PTAB's operations, quite irrelevant to the jurisdictional question confronting this Court. See *Rosewell*, 450 U.S. at 521 n. 27, 101 S.Ct. at 1233 n. 27. Plaintiffs are free to raise that claim in the Illinois courts, for (as this Court noted in *Axelrod*, 565 F.Supp. at 554) those courts have clearly established their receptiveness to such constitutional claims. See, e.g., *Uretsky v. Baschen*, 47 Ill.App.3d 169, 175, 5 Ill.Dec. 552, 557, 361 N.E.2d 875, 880 (2d Dist. 1977).

### (d) Class Actions

■ Plaintiffs also say Illinois remedies are not "efficient" because Illinois does not allow class action suits to contest all over-assessments within the same township. There is a serious question whether that accurately reflects the state of Illinois law (and this is not the only instance in which the representations made on plaintiffs' behalf are shaded, or at least questionable). But even leaving that aside, as with their other arguments plaintiffs have not sought to explain (or to prove) how the absence of a class action remedy creates inefficiency.

Of course the absence of a class action mechanism is likely to necessitate a multiplicity of individual objections before the County Boards. But it is a total non sequitur conclude the unavailability of that procedure renders the Illinois scheme less than "efficient."

First, plaintiffs once again appear to argue the federal class action offers a better remedy than the state procedure. *Miller*, 517 F.2d at 32 forecloses that contention.

Second, *Bunte Candies, Inc. v. Cartwright*, 508 F.Supp. 229, 233–34 (W.D.Okla. 1981) rejected the same "multiplicity of suits" argument as insufficient to confer jurisdiction otherwise barred by the Act:

> Similarly, the Courts have been almost uniform in rejecting the "multiplicity of suit" argument and others that are related to it. The U.S. Supreme Court rejected multiplicity of suits as grounds for finding a state remedy to be inadequate in *Matthews v. Rodgers*, 284 U.S. [521] at 529–30, 52 S.Ct. [217] at 221 [76 L.Ed. 447 (1932)]. The Supreme Court indicated that the multiplicity of suits argument might be persuasive in a situation involving numerous suits between the same parties involving the same issues of law, but not in those situations where there are numerous parties plaintiff or defendant or involving varying issues of law or fact. Several of the federal appeals courts [27] have found the multiplicity argument to be an insufficient basis for a determination of inadequacy in cases involving state procedures and facts substantially similar to those in the instant case.

Clearly every overassessed taxpayer's objections will entail different factual questions as to the fair market value of the taxpayer's property. No reduction in the "time or effort" required to resolve those factual issues would be generated by allowing plaintiffs to institute a class action.

Third, delicacy almost (but not quite) leads this Court to refrain from the obvious comment that plaintiffs have proved by the tortured history of this very lawsuit that class actions provide no assurance of efficiency. To the contrary, there are plainly some matters that do, and others that do not, lend themselves to the class action device. Even a casual look through *Newberg on Class Actions* or the annotations to Rule 23 provides graphic demonstrations of that obvious fact. And this present action supports the inutility, rather than utility, of the class action for many (if not most) of the issues presented in the tax assessment context.[28]

### (e) Relitigation

■ Finally (and at long last!) plaintiffs contend Illinois' remedy is not efficient because Boards ignore PTAB decisions reducing assessments and boost those assessments in later tax years, thus forcing taxpayers to relitigate the same issues every year. To prove that assertion plaintiffs focus on the experience of Ursula Eichhorn ("Eichhorn"). During the years 1976–79 PTAB consistently lowered the Board assessment of Eichhorn's property, but the Assessor and Board then restored a portion of PTAB's cuts.

It is unnecessary to pause on the merits of the Eichhorn situation, because the Illinois General Assembly has addressed the precise problem of which plaintiffs com-

---

27. [This Court's footnote] That includes our own Court of Appeals in *Miller*.

28. Relatedly, to the extent plaintiffs challenge the constitutionality of the Illinois tax assessment scheme, a single lawsuit should suffice to settle that issue. *Miller*, 517 F.2d at 32.

plain. Section 592.4 has been amended effective January 1, 1984 to provide:

> If the Property Tax Appeal Board renders a decision lowering the assessment of a particular parcel on which a residence occupied by the owner is situated, such reduced assessment, subject to equalization, shall remain in effect for the remainder of the quadrennial assessment period as provided in Section 43, unless upon proper filing, the local board of review or other interested party can show substantial cause why such assessment should not remain in effect the remainder of the quadrennial assessment period, or unless the decision of the Property Tax Appeal Board is reversed or modified upon review.

If there had been any "efficiency" defect in the Illinois system of the nature charged by plaintiffs, that amendment cured it.

But just as critically, it is simply wrong to universalize the experience of a single taxpayer. Plaintiffs' citation to what happened to Eichhorn—one lone example after plaintiffs' full opportunity to engage in discovery—does not demonstrate a systematic disregard in subsequent assessments of the factual basis of PTAB's actions. This Court's analysis of a similar claim in *Axelrod,* 565 F.Supp. at 555 is equally applicable here:

> Moreover, even if the appraisers had flouted PTAB's earlier determination (as the evidence does not show), a single instance of PTAB subversion could scarcely establish a widespread course of conduct among assessors. Only the latter sort of generic determination can defeat the applicability of the "plain, speedy and efficient" exception.

> \* \* \* \* \* \*

Plaintiffs have swung at the Act's third pitch (the "efficient" standard) and again come up with nothing but air. It needs no elaboration to recognize the consequences of a third strike.

### Conclusion

With due apologies to T.S. Eliot's *The Hollow Men,* plaintiffs' "world ends not with a bang but a whimper." Their seven-year season in this federal court lawsuit has ended with a final strikeout. Defendants' motions to dismiss this action for want of subject matter jurisdiction are granted.