John Michael HERMES, Burt Kaminsky, Arthur Hochstradter, Timothy Hillyer, Frank Murphy, Michael Rompala, Jr., Michael Staufenbiel, Dexter Gorski, Lawrence Parks, Bruce P. Batka, and William Sharpe, Plaintiffs-Appellants,

v.

William HEIN, individually and as President of the Village Board of the Village of Wheeling, Illinois; Jack Metzger, individually and as Chairman of the Board of Fire and Police Commissioners of the Village of Wheeling, Illinois; Jerome Vesecky, individually and as Secretary of the Board of Fire and Police Commissioners of the Village of Wheeling, Illinois; Alan Carlson, individually and as a member of the Board of Fire and Police Commissioners of the Village of Wheeling, Illinois; Ronald Bruhn; Robert Olson; Theodore Bracke, individually and as Chief of Police of the Village of Wheeling, Illinois; Billy Wayne Ralston; Jack Koenig; and the Village of Wheeling, an Illinois corporation and body politic, Defendants-Appellants.

Nos. 82–3099, 83–2119.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1984.

Decided Aug. 17, 1984.

Michael J. Wall, Rothschild, Barry & Myers, Chicago, Ill., for plaintiffs.

Gary A. Weintraub, Jann, Carroll, Sain & Dolin, David A. Epstein, Chicago, Ill., for defendants.

Before CUDAHY, FLAUM, Circuit Judges, and BARTELS, Senior District Judge.[*]

FLAUM, Circuit Judge.

This action, brought under 42 U.S.C. §§ 1983 and 1985, presents us with appeals from the district court's decisions granting the defendants' motions for summary judgment and awarding the defendants more than $89,000 in attorneys' fees and costs. For the reasons set forth below, we affirm the summary judgment ruling, but we remand the case for further consideration of the issue of attorneys' fees.

In the fall of 1978, the Board of Fire and Police Commissioners of the Village of Wheeling, Illinois, ("Commissioners") conducted competitive examinations for the purpose of promoting one police officer to the rank of lieutenant and one officer to the rank of sergeant. The examinations consisted of four components, each of which contributed a fixed percentage to the final score: written examination—55%; oral examination—25%; merit and efficiency rating—10%; seniority (1% per year with a maximum of ten years)—10%. Plaintiff Hermes, a police officer in the Wheeling Police Department, participated in the competition for promotion to lieutenant, while the other ten plaintiffs, also Wheeling police officers, took the examination for promotion to sergeant. Although the Commissioners awarded Hermes the maximum possible score on each discretionary component of the lieutenant examination, Hermes placed second on the final eligibility list for the lieutenant position. Four of the plaintiffs competing for the sergeant position failed the written examination and were disqualified. The remaining six plaintiffs placed sixth, seventh, eighth, eleventh, fourteenth, and sixteenth on the final sergeant list. After the posting of the final lists, defendants Ralston and Koenig, who placed first on the lieutenant and sergeant lists, respectively, received the promotions.

The plaintiffs filed suit in federal district court on February 27, 1979. They alleged that the Commissioners, the President of the Village of Wheeling, and the Village of Wheeling[1] falsified the results of the examinations and manipulated the numerical rank of each candidate on the eligibility lists for the purpose of promoting Ralston and Koenig, who allegedly have local political affiliations. The plaintiffs claimed that this conduct violated their first amendment right to remain politically neutral and their due process right to promotion and that they were entitled to relief under 42 U.S.C. §§ 1983 and 1985. The defendants moved to dismiss the complaint. On November 16, 1979, the district court[2] ruled that although the complaint adequately alleged a violation of the plaintiffs' first amendment rights, it did not allege a sufficient basis on which to find that the plaintiffs had a property interest in promotion for purposes of due process. The court thus dismissed the plaintiffs' due process claim with leave to amend. *Hermes v. Hein*, 479 F.Supp. 820, 824–25 (N.D.Ill.1979). The plaintiffs then amended their complaint, and the defendants again moved for dismissal. On December 24, 1980, the district court denied the defendants' motion to dismiss the amended complaint, ruling that the plaintiffs' allegations were sufficient to establish a due process property interest in promotion. *Hermes v. Hein*, 511 F.Supp. 123 (N.D.Ill.1980).

During 1979 and 1980, the plaintiffs conducted sixteen deposition sessions and served interrogatories on the defendants, while the defendants posed interrogatories to the plaintiffs. The defendants moved for summary judgment on March 25, 1981, and the district court granted the motion on November 30, 1982. The defendants

---

[*] The Honorable John R. Bartels, Senior District Judge of the Eastern District of New York, is sitting by designation.

1. During the course of the litigation, the plaintiffs added successors in office and police officers Ralston and Koenig as defendants.

2. Prior to November 24, 1980, this case was before Judge Bua. On that date, the case was reassigned to Judge Kocoras.

then asked for attorneys' fees and costs, and on May 13, 1983, the district court awarded $87,326.50 in fees and $2,344.65 in costs. The plaintiffs now appeal both district court rulings.

### Summary Judgment

In its memorandum opinion granting the defendants' motion for summary judgment, the district court found that the plaintiffs failed to provide any factual support or raise any genuinely contested issues of material fact regarding either their first amendment claim of political discrimination or their due process claim. With regard to the first amendment claim, the court applied the principles of *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and ruled that the plaintiffs failed to show both that their political associations were a motivating factor in the promotion process and that but for their protected conduct, they would have been promoted. In discussing the due process claim, the court stated that, to establish a due process property interest in promotion under the guidelines expressed in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the plaintiffs had to show that the defendants had a policy, communicated to the plaintiffs, to promote in exact rank order from the eligibility roster. The court found, however, that although the plaintiffs properly alleged such a policy, they failed to adduce any meaningful facts to support their allegations. Furthermore, with regard to both the first amendment and the due process claims, the court held that the "[p]laintiffs simply have no actual support for their charges of impropriety or irregularity concerning the administration of the oral and written promotional exams." Memorandum Opinion dated November 30, 1982, at 12. In addition, the court found that no material facts supported the plaintiffs' conspiracy charges under 42 U.S.C. § 1985(3).

In appealing the district court's decision, the plaintiffs contend first that the district court did not use the proper legal standard to decide the defendants' motions for summary judgment. The plaintiffs also argue that genuine issues of material fact exist on both the first amendment and the due process claims. Finally, the plaintiffs maintain that the district court abused its discretion by denying their request for additional discovery.

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In responding to a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e). *See also Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 392, 393, 78 L.Ed.2d 336 (1983). Although any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party, only reasonable inferences will be considered. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983).

Applying this legal standard to the facts in the present case, the district court's grant of summary judgment on the plaintiffs' first amendment claim will be sustained if the only reasonable inferences from the record are that Ralston and Koenig would have been promoted regardless of their political affiliations.[3] *See Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (no constitutional violation where public employer can show that employee

---

**3.** It is undisputed that political nonaffiliation is a right protected under the first amendment. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). *See also Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980).

would have been transferred even if employee had not exercised first amendment rights). *Cf. Egger v. Phillips,* 710 F.2d 292, 322–23 (7th Cir.1983) (en banc) (although record revealed that employer would not have transferred employee but for employee's first amendment activity, summary judgment for defendant was proper where transfer was tailored to vindicate specific state interest at stake), *cert. denied,* —— U.S. ——, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). If evidence of the defendants' motivation in promoting Ralston and Koenig is subject to conflicting interpretations, summary judgment is not appropriate, regardless of the defendants' denials of political motivation. *Conrad v. Delta Airlines,* 494 F.2d 914, 918 (7th Cir. 1974).

■ In support of their motions for summary judgment, the defendants presented deposition testimony and interrogatory answers to demonstrate that neither Ralston nor Koenig have any local political affiliations and that, in any event, both officers would have been promoted regardless of their political associations. In response to the defendants' motions, the plaintiffs failed to set forth specific facts showing that there was an issue as to Ralston's political affiliations,[4] and our review of the record does not reveal any fact from which we can infer that Ralston has such affiliations. In the case of Koenig, there is deposition testimony that Koenig's wife worked on defendant Hein's political campaign at the request of defendant Metzger. However, the plaintiffs have failed to respond to the defendants' motions by producing evidence from which to infer that Koenig would not have been promoted to sergeant but for his associations with Metzger and Hein. Though the plaintiffs maintain that the defendants falsified test scores in the competition for the sergeant position and that the defendants improperly manipulated the candidates' numerical ranking on the sergeant promotion list, the record contains no factual support for these allegations.[5] We thus are unable to draw a reasonable inference from the record that either Ralston or Koenig would not have been promoted but for his political affiliations, and we affirm the district court's conclusion that there is no genuine issue of material fact as to the plaintiffs' first amendment claim.

■ With regard to the plaintiffs' due process claim, it is clear that the district court's grant of summary judgment cannot be upheld if there is a reasonable inference that the plaintiffs have a property interest in promotion and that promotion was denied to them without due process. *See Hadley v. County of DuPage,* 715 F.2d 1238, 1240–41 (7th Cir.1983). A property interest in promotion need not arise out of

---

4. In an affidavit submitted in response to the defendants' motions for summary judgment, plaintiff Hermes stated that he "is informed and believes" that, during a 1975 election campaign and at the direction of Hein, Ralston examined garbage from the homes of Hein's political opponents in search of politically damaging material. We can find no fact in the record to support this belief. Although the plaintiffs point to the deposition of Harvey Gorman, we note that Gorman stated only that he had heard about a search of garbage but that he never heard that Ralston took part in the search. Deposition of Harvey Gorman at 62–63.

5. The plaintiffs state in their brief that Officer William Hoos, who was competing for promotion to sergeant, received additional seniority points and a higher ranking on the eligibility roster only after he discussed his seniority points with the Commissioners and submitted a resume containing a pledge of loyalty to the

current political administration. Appellants' Brief at 23–24, 27. Our review of Hoos's deposition, however, reveals that Hoos submitted his resume to the Commissioners at the time of his oral interview during the competition for promotion. Deposition of William Hoos at 37. Hoos stated that, after his oral examination, the initial sergeant eligibility list was posted, and Hoos ranked very low due to the fact that he received minimal seniority points. *Id.* at 26. Hoos later was awarded additional seniority points after he informed the Commissioners that other officers with comparable employment histories had been given additional points in similar situations. *Id.* at 31–33. Based on this testimony of Hoos, who is not a party in this action, and based upon a lack of evidence that Hoos had any political affiliations, we cannot reasonably infer that political favoritism led the Commissioners to manipulate Hoos's promotional ranking.

a contract or statute, but may be based on a *de facto* promotional program. In *Perry v. Sindermann,* 408 U.S. at 602, 92 S.Ct. at 2700, the Supreme Court held that, although there was no formal tenure procedure in the Texas state college system, the plaintiff professor should have been given the opportunity to establish a legitimate claim of entitlement to tenure by showing that an unwritten "common law" of tenure was created in practice. Such a common law of employment is established through rules or mutually explicit understandings, *id.* at 601, 92 S.Ct. at 2699, and not solely through the past practices of the employer. *See Board of Regents v. Roth,* 408 U.S. at 578 n. 16, 92 S.Ct. at 2710 n. 16 (although most professors hired on year-to-year basis by university were in fact rehired, such past practice did not constitute common law of re-employment). *See also Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1099 (9th Cir.1981) (mere fact that bank never had terminated someone like plaintiff was insufficient to create plaintiff's entitlement in employment), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982).

 The district court in the present case relied on *Perry* and *Roth* when it denied the defendants' second motion to dismiss and ruled that the plaintiffs had alleged a due process property interest in promotion by claiming that the defendants' unwavering custom, communicated to the plaintiffs, was to promote only the top candidate on each eligibility roster. In their subsequent motions for summary judgment, the defendants argued that such a custom could not establish a legitimate property interest because it would be inconsistent with Ill.Rev.Stat. ch. 24, § 10–2.1–15 (1979), which states that fire and police commissioners may promote any of the top three candidates. We need not decide

whether Illinois law would allow the defendants to adopt a policy of promoting only the highest ranked candidate because, even if it would, there is no evidence from which we can reasonably infer that this alleged policy was ever promulgated throughout the police department or stated to any of the plaintiffs.[6] In the absence of such communication, we cannot conclude that the record reflects a rule or mutually explicit understanding sufficient to establish a due process property interest. We thus affirm the district court's grant of summary judgment on the plaintiffs' due process claim.

In addition, we find no merit to the plaintiffs' contention that the district court erred in denying their request for additional discovery. On February 25, 1982, approximately seven months after both parties fully briefed the defendants' motions for summary judgment, the plaintiffs requested a delay in the district court's ruling so as to afford the plaintiffs the opportunity to redepose former Wheeling police officer Thomas Conte. The plaintiffs explained that Conte informed them that he had additional information that would be helpful to them in this suit. The district court allowed the plaintiffs to submit an affidavit from Conte. Upon reviewing the information revealed in the affidavit, the court denied the plaintiffs' request.

 Whether to allow further discovery during the pendency of a motion for summary judgment is within the discretion of the district court. *Cf.* Fed.R.Civ.P. 56(f) (where party opposing summary judgment motion is unable to present by affidavit facts essential to justify opposition, court may order continuance to permit discovery or may make such other order as is just). After considering Conte's affidavit and the

---

**6.** The plaintiffs recount in their brief that, when Hermes was denied promotion to the rank of lieutenant, he received a note from the Commissioners explaining that "points were applied" and Ralston obtained the promotion. According to the plaintiffs, this communication informed the plaintiffs that it was the unwavering policy of the Village of Wheeling to promote the top-ranked candidate from every promotion eligibility list. We do not agree. The note received by Hermes is a brief explanation of the reasons for Ralston's promotion. We cannnot reasonably infer that this note created a mutually explicit understanding that the application of points is and has been the sole criterion for promotion in the Wheeling Police Department.

ample opportunity that was afforded to the plaintiffs to conduct discovery prior to the defendants' motion for summary judgment, we cannot conclude that the district court abused its discretion in denying the plaintiffs' request for further discovery.

### Attorneys' Fees

In a memorandum opinion issued approximately six months after it granted summary judgment in this case, the district court awarded attorneys' fees to the defendants pursuant to 42 U.S.C. § 1988 (1982). The court stated that the plaintiffs' response to the defendants' motions for summary judgment was not only inadequate to withstand the summary judgment motion, "but it also demonstrated beyond peradventure that the plaintiffs' action lacked any factual substance from the outset." Memorandum Opinion dated May 13, 1983, at 4. Furthermore, as an additional basis for its award of fees and costs, the court referred to several of the plaintiffs' motions for temporary restraining orders as "actions ... which were calculated to confound the defendants' legitimate operations at almost every turn." *Id.* at 5. The court agreed with the defendants that the plaintiffs' action disrupted the Wheeling Police Department for nearly four years, and it observed that this "internecine warfare" may have adversely affected the Wheeling community. *Id.* The court then concluded that "where all of this turmoil was generated by allegations which were, at bottom, completely hollow, it is particularly appropriate to award attorneys fees against the plaintiffs who instituted this action and pressed it for four years." *Id.*

The plaintiffs, in appealing this decision, contend that their action was not frivolous, unreasonable, or so lacking in factual support that an award of attorneys' fees was appropriate. The plaintiffs assert that circumstantial evidence bolsters their charges. Furthermore, the plaintiffs argue that even if their suit was frivolous,

the amount of fees awarded by the district court is not supported by the record.

■ In cases brought under 42 U.S.C. §§ 1983 and 1985, the district court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1982). The Supreme Court has determined that a district court may assess attorneys' fees against plaintiffs in section 1983 actions only if it finds that their claims were " 'frivolous, unreasonable, or groundless, or that the plaintiff[s] continued to litigate after [their claims] clearly became so.' " *Hughes v. Rowe,* 449 U.S. 5, 15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978)). *See also Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1937 n. 2, 76 L.Ed.2d 40 (1983) (for defendant to be entitled to attorneys' fees under 42 U.S.C. § 1988, court must find that plaintiff's action was "vexatious, frivolous, or brought to harass or embarrass the defendant"). The Court has stated that although plaintiffs' subjective bad faith is not a prerequisite to an award of attorneys' fees to defendants, district courts should not conclude that an action is unreasonable simply because it is ultimately unsuccessful. *Christiansburg Garment Co. v. EEOC,* 434 U.S. at 421–22, 98 S.Ct. at 700–01.[7] The Court has recognized that, at the time suit is brought, a plaintiff seldom can be sure of ultimate success:

No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may

---

7. Although *Christiansburg* concerned an award of attorneys' fees to defendants under 42 U.S.C. § 2000e–5(k), the same principles apply under

42 U.S.C. § 1988. *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981).

have an entirely reasonable ground for bringing suit.

*Id.* at 422, 98 S.Ct. at 700.

This court recently applied these principles in *Ekanem v. Health & Hospital Corp.*, 724 F.2d 563 (7th Cir.1983), *petition for cert. filed,* 52 U.S.L.W. 3846 (May 4, 1984) (No. 83–1805),[8] where the plaintiffs filed individual and class claims of racial discrimination in the defendants' employment practices, individual claims of retaliation for protesting such discrimination, and individual claims of violations of first amendment rights. After twenty-six days of trial, when the plaintiffs concluded their case in chief, the trial court granted the defendants' motion for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. The trial court later awarded attorneys' fees and costs to the defendants. On appeal, this court upheld the trial court's grant of dismissal, but reversed the award of fees. Relying on the rationale expressed in *Christiansburg*, this court stated that the "plaintiffs could not have known the likelihood of success on the merits of their claims until they had gathered all of their evidence." *Id.* at 574. This court further reasoned that, since the trial court certified the plaintiffs' class and ruled for the plaintiffs on the discovery issues, and since the plaintiffs attempted to buttress their claims with evidence, the plaintiffs did not act unreasonably in proceeding to trial. Finally, the court noted that the plaintiffs' theory of a discriminatory pattern or practice afforded them "wide latitude in attempting to establish circumstantial evidence of unlawful intent." *Id.* at 575. In light of all these factors, this court concluded that the trial court abused its discretion in awarding attorneys' fees to the defendants.

■ In the present case, the district court based its award of fees both on its conclusion that the plaintiffs attempted "to confound" the defendants during the litigation by filing motions to restrain police operations and on its finding that the plaintiffs' allegations lacked any factual substance from the outset. The court discussed several of the motions brought by the plaintiffs, pointing out that they sought to restrain police operations that either were outside the scope of the civil service promotional system or were expressly conditioned on the outcome of the plaintiffs' suit. Memorandum Opinion dated May 15, 1983, at 5. However, the court did not discuss the specific information that formed the basis for the plaintiffs' suit, and it did not explain why this information did not constitute adequate factual substance for the commencement of a nonfrivolous civil rights case. Plaintiff Hermes, for example, asserted in an affidavit, and the defendants have never disputed, that Koenig's wife was involved in the political campaign of defendant Hein. Hermes also stated in his affidavit that he was warned by Koenig not to make waves with the administration. This factual evidence assuredly is inadequate to survive a motion for summary judgment on either the first amendment claim or the due process claim. Yet, when deciding whether plaintiffs' claims are groundless, district courts should consider this type of evidence in light of the principle expressed in *Christiansburg* that factual uncertainty may exist at the outset of litigation and also in light of the wide latitude that this court in *Ekanem* allowed to plaintiffs' attempts to establish circumstantial evidence of unlawful intent. Such consideration is especially important where, as here, the district court originally ruled that the plaintiffs' allegations were sufficient to state a cause of action. *See generally Ekanem v. Health & Hospital Corp.*, 724 F.2d at 575 (plaintiffs did not act unreasonably in pursuing suit where trial court certified plaintiffs' class and ruled for plaintiffs on discovery issues); *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir.1983) (denial of attorneys' fees to defendants was

---

**8.** The petition for certiorari in *Ekanem* was filed by the plaintiffs on the question of the dismissal of their claims. The issue of attorneys' fees in *Ekanem* is not pending before the Supreme Court.

not abuse of discretion where district court permitted class claims to remain in case and plaintiff dropped claims when discovery pointed to lack of merit).

■■■ After a careful review of the record in this very close case, the principles stated in *Christiansburg* and *Ekanem* lead us to the conclusion that the information indicated by the plaintiffs in their answers to interrogatories and in Hermes's affidavit were sufficient to constitute a nonfrivolous basis for suit, and the district court abused its discretion in holding otherwise. We recognize, however, in view of the plaintiffs' motions to restrain police operations and the testimony obtained through depositions, that this suit may have become frivolous or vexatious at some point during the litigation. *See Hughes v. Rowe*, 449 U.S. at 15, 101 S.Ct. at 178; *Christiansburg Garment Co. v. EEOC*, 434 U.S. at 422, 98 S.Ct. at 700. The identification of such a point involves an assessment of the conduct of the parties at the various stages of litigation and thus is uniquely within the province of the district court. We therefore remand this case.

On remand, the district court should determine whether and when it should have become clear, in light of the plaintiffs' failure to uncover necessary facts from discovery already taken, that further discovery would not have produced sufficient evidence of a genuine issue of material fact. It is only at such a juncture that the plaintiffs' continued litigation might have become frivolous so as to justify attorneys' fees for subsequent work. The district court should bear in mind the warning in *Christiansburg* against *post hoc* reasoning, 434 U.S. at 421–22, 98 S.Ct. at 700–01, and it should give due consideration to the

Conte affidavit and to the necessarily circumstantial nature of the plaintiffs' case. In particular, the Conte affidavit appears to contain the suggestion that the entire promotion process, involving the chief and the mayor in selecting the Commissioners, was affected by political concerns.[9]

Although we realize the difficulty of determining exactly when during the discovery process litigation might have become frivolous, it is important, with the burgeoning number of lawsuits filed each year, that trial courts review and specifically note the lack of progress of pending cases.[10] Such monitoring enables trial courts, at early stages in litigation, to alert certain plaintiffs to the perilous course that their suits may be taking due to an increasingly apparent lack of support for their claims. In addition, a record that reflects such judicial oversight during discovery can later provide a point of reference for awarding fees in a manner that encourages the abandonment of claims that become hopeless, but does not discourage the nonfrivolous filing of civil rights suits. Moreover, it is only with specific references by the district court to a monitored discovery record that appellate courts can conduct meaningful review of fee awards.

Accordingly, we affirm the district court's grant of summary judgment, and we remand for further determination of the issue of attorneys' fees consistent with this opinion.

---

**9.** In light of our remand, we need not address the plaintiffs' contention that the amount of fees awarded by the district court is not supported by the record.

**10.** We note that the 1983 amendments to the federal rules governing discovery "contemplate[ ] greater judicial involvement in the discovery process and thus acknowledge[ ] the reality that it cannot always operate on a self-regulating basis." Fed.R.Civ.Pro. 26(b) ad-

visory committee note. The current rules allow trial courts, acting upon their own initiative, to limit the frequency or extent of use of discovery methods if they determine that a "party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought." Fed.R.Civ.Pro. 26(b). It is through such *sua sponte* determinations that courts may detect lack of progress in pending cases.