Margaret COLEMAN, et al., Plaintiffs,

v.

Robert McLAREN, et al., Defendants.

No. 78 C 2117.

United States District Court,
N.D. Illinois, E.D.

March 25, 1986.

See also, D.C., 635 F.Supp. 266.

Marshall Patner, Chicago, Ill., Jack Uretsky, Hinsdale, Ill., Ronald Futterman, Hartunion, Futterman & Howard, Chtd., Chicago, Ill., for plaintiffs.

Fred L. Foreman, James C. Bakk, State's Atty. of Lake Co., Waukegan, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's October 7, 1985 memorandum opinion and order, 631 F.Supp. 749 ("Opinion III"[1]) dismissed this action for want of subject matter jurisdiction under Rule 12(b)(1), by reason of the Tax Injunction Act of 1937 (the "Act," 28 U.S.C. § 1341) and the more expansive bar imposed by *Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). Now the "Lake County Defendants" (Lake County itself, its Board of Review and Robert Jasper) ask for the allowance of a portion of their reasonable attorneys' fees and expenses, to be charged against Lake County plaintiffs Paul and June Hamer ("Hamers") or their lawyers or both under 42 U.S.C. § 1988 ("Section 1988"). For the reasons stated in this memorandum opinion and order, Lake County Defendants' motion is granted.

Prevailing defendants in 42 U.S.C. § 1983 ("Section 1983") lawsuits[2] have a substantial hurdle to overcome to recover their litigation expenses: It is not enough just to win, for they must show plaintiffs' claim was "frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).[3] Here Lake County Defendants urge a variant on that theme. They say even if Hamers' claim did not initially fit that description of emptiness, it surely did after Judge Aspen's decision against Hamers themselves in *Hamer v. Anderson,* 594 F.Supp. 561 (N.D.Ill.1984). If so, that meant they

---

1. *Opinion I,* 98 F.R.D. 638 (N.D.Ill.1983) dealt with the initial complex class certification issues, involving (1) an asserted plaintiff class and several subclasses and (2) asserted defendant classes in addition to the individual defendants. Plaintiffs won only to a limited extent, losing on most issues. *Opinion II,* 572 F.Supp. 178 (N.D. Ill.1983) denied defendants' Fed.R.Civ.P. ("Rule") motion to dismiss the Complaint for failure to state a claim upon which relief can be granted.

2. Hamers' counsel continue to betray the same kind of inability to apply legal doctrine that marked their earlier unsuccessful briefing on the jurisdictional issues. Their Mem. 4 n. 4 cites *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) for this claimed proposition:

    It seems questionable whether a defendant who "prevails" on a jurisdictional motion is a "prevailing party" under 42 U.S.C. 1988.

    That is not a fair reading of *Hensley.* Our own Court of Appeals had previously held squarely to the contrary in *Werch v. City of Berlin,* 673 F.2d 192, 194–95 (7th Cir.1982), and though *Werch* was pre-*Hensley,* the Court of Appeals for the Fourth Circuit has made the identical holding post-*Hensley* in *Hutcherson v. Board of Supervisors of Franklin County, Virginia,* 742 F.2d 142, 146 (4th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1358, 84 L.Ed.2d 380 (1985).

3. Though *Christiansburg Garment* was a Title VII case, the Supreme Court shortly thereafter made plain the applicability of the identical principles and standards to govern the potential assessment of fees against unsuccessful plaintiffs in Section 1983 actions. *Hughes v. Rowe,* 449 U.S. 5, 14–15, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980) (per curiam).

"continued to litigate after [their claim] clearly became [frivolous, unreasonable, or groundless]" (*Christiansburg Garment*, 434 U.S. at 422, 98 S.Ct. at 701). Thus Lake County Defendants ask to recover not all of their fees and expenses, but only those incurred after September 27, 1984 (the date of Judge Aspen's *Hamer* decision).

■ Of course any such mechanical rule hinging solely on Judge Aspen's decision overstates the case.[4] In the federal system only the Supreme Court is omniscient. No litigant is required to lie down and play dead just because a district court judge (or, for that matter, a court of appeals panel) has previously ruled the other way on the legal position the litigant now seeks to advance. Intercircuit conflicts are all too common—and that certainly applies a fortiori to differences of view among district courts. Even were that not the case, the salutary principle in Code of Professional Responsibility DR 7–102(A)(2) and in Model Rule of Professional Responsibility 3.1 allows counsel to make a "good faith argument for an extension, modification or reversal of existing law"—and the same concept should extend to create Section 1988 nonliability. Accordingly *Hamer* may be a factor to be taken into account (as possible evidence of Hamers' frivolousness, unreasonableness or groundlessness in the present case), but it surely is not determinative.

Consequently this opinion will deal with the *Christiansburg* inquiry as of the date for which Lake County Defendants contend—September 27, 1984—but it will view the *fact* of Judge Aspen's decision as an element in the equation, rather than treating the decision itself as controlling.[5] Some six months before *Hamer* this Court (in the course of a Mar. 19, 1984 procedural ruling (Tr. 3–7) on objections to a Magistrate's recommendation) warned plaintiffs' counsel their claim could be in serious trouble based on the Supreme Court's decisions in *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) and in *McNary*. Then shortly after *Hamer* was decided, Lake County Defendants' counsel wrote plaintiffs' attorneys a reasoned and detailed letter urging them to desist from further proceedings here (see App. 1). Plaintiffs' lead counsel shot back a rejection (see App. 2) *by return mail* (so much for Lake County Defendants' request to "Think about it," contained in the App. 1 letter to which plaintiffs' counsel was responding).

This is not then a case in which a Section 1983 plaintiff is met with an unanticipated motion for fees under Section 1988. By continuing to litigate after such fair warning, Hamers must be deemed to have proceeded at their peril—*if*, of course, their claims then failed the test of nonfrivolousness. This opinion turns to that question.

When this Court inherited this action as part of its original calendar in June 1980, the lawsuit was over two years old. It had been filed when the Act had not yet been the subject of definitive readings by the Supreme Court. Certainly the professions of good faith filing now made by plaintiffs' counsel (Futterman Aff. ¶ 2) were reason-

---

**4.** Hamers' counsel, however, are at least equally guilty of overstating *their* case. Their Mem. 5–6 claims *Hamer* should not be taken into account because it involved a different attack on the Illinois tax refund system—that it was somehow a "sideshow" to this lawsuit's "main event." That argument is specious at best. Though the nature of Hamers' particular onslaught in *Hamer* was different from the many-faceted assaults in this case, the legal question whether Illinois afforded a "plain, speedy and efficient" remedy, dealt with by Judge Aspen in *Hamer*, was the same as here—and equally importantly, many of the facts on which Hamers relied there were identical to those advanced here. Hamers and

their lawyers seem to have blinded themselves to the parallels between the two cases, just as they previously blinded themselves to the lack of substance in their arguments supporting claimed subject matter jurisdiction here.

**5.** Lake County Defendants argue in part that *Hamer* controls here on res judicata grounds (an argument they had also made in the briefing that led to Opinion III). Because Lake County Defendants' Rule 12(b)(1) motion was successful on other grounds, Opinion III did not rule on their res judicata argument (see Opinion III, 631 F.Supp. at 752–53).

able not only subjectively but objectively. During a short span of two years after this case had come to this Court, however, the Supreme Court made plain the parameters of actions like Hamers' in no fewer than three cases: *Rosewell, McNary* and *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). And in the same period the Supreme Court decided in *Hughes* that the Section 1988 standard for awarding attorneys' fees to defendants was objective non-frivolousness, not subjective good faith.

Those decisions (either with or without this Court's later decision in *Axelrod v. Earhart,* 565 F.Supp. 549 (N.D.Ill.1983) and Judge Aspen's opinion in *Hamer*) sap all vitality from the current representations by Hamers' counsel (Futterman Aff. ¶¶ 3–6) that they continued to pursue the Holy Grail in an honest belief in Hamers' claims.[6] At least by the time *Hamer* was decided, any such belief represented what has been termed the "empty head, pure heart" syndrome.[7]

■ Perhaps recognizing (though they do not acknowledge) their claimed subjective good faith cannot do the job, Hamers' counsel struggle in a number of ways to escape the toils of Section 1988 liability. None is any more successful than the "good faith" argument already rejected:

1. Invoking language in *Ekanem v. Health & Hospital Corp. of Marion County, Indiana,* 724 F.2d 563, 574 (7th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 93, 83 L.Ed.2d 40 (1984), Hamers' counsel point to this Court's Opinion I certifying in part the requested plaintiffs' classes. In like manner, counsel advert to this Court's denial of the motion to dismiss in Opinion II. But in each instance this Court simply accepted—as it had to for purposes of the motions— the Complaint's *allegations* (necessarily unsupported by facts at that stage) that Illinois did not provide a "plain, speedy and efficient remedy." Thus nothing in those procedural rulings has any probative force in judging whether years later, after all the facts *were* in, Hamers and their counsel should have known that no colorable basis existed for those allegations.

2. Hamers Mem. 4 also refers to the issuance of this Court's "favorable discovery ruling," in an effort to call into play the same language in *Ekanem.* But the ruling to which they refer was a miniscule one, implicating no view at all as to the soundness of Hamers' position on the issues that control here. Moreover it is worth noting the exceedingly low threshold a litigant must surmount generally to be entitled to such discovery: *not* admissibility into evidence of the information itself, but simply the reasonable likelihood of its leading to the

---

**6.** In Hamers Mem. 1 & n. 1 their counsel make a point (in support of their "good faith" argument) of the fact that they have not only handled this litigation on a wholly contingent-fee basis but have advanced all but a nominal amount of the expenses as well. This Court should not be misunderstood as criticizing the contingent-fee practice, which can serve a constructive social purpose in allowing colorable claims to be litigated when the clients could not otherwise finance the all-too-high costs of litigation today. But what Hamers' counsel fail to recognize is that their financial arrangement, which effectively converts their position to that of clients, poses a serious risk of loss of the objectivity that should attend a lawyer's role (remember the adage that "A lawyer who represents himself has a fool for a client").

**7.** That phrase or its close variant (e.g., "good heart but an empty head," *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 312 (7th Cir.1986)) has been employed in a good many contexts where "good faith" is judged by objective rather than subjective standards, *id.* One of those instances, for example, marks the change from (1) the earlier incarnation of Rule 11 (when subjective good faith was enough to avoid imposition of fees—hence "empty head, pure heart" was enough to forestall liability) to (2) the present version of Rule 11 (which applies an *objective* view, so the "empty head" prevails over any "pure heart" to create liability). As with Rule 11 (*Frazier v. Cast,* 771 F.2d 259, 265 n. 4 (7th Cir.1985)) and 28 U.S.C. § 1927 (*In re TCI Ltd.,* 769 F.2d 441, 445 (7th Cir.1985)) and Title VII cases (*Christiansburg Garment,* 434 U.S. at 421–22, 98 S.Ct. at 700–01), the objective rather than subjective approach applies under Section 1988 as well. *Hughes,* 449 U.S. at 14–15, 101 S.Ct. at 178–79.

discovery of admissible evidence (Rule 26(b)(1)).

3. Hamers Mem. 3 refers to settlement discussions by other defendants before Opinion III issued. But this litigation had then been going on for years, and all defendants knew they were facing stubborn adversaries who (given their counsel's contingent-fee representation) were incurring no legal expenses for their continued draining of the resources of small governmental-unit defendants (scarcely litigants of the deep-pocket category). Under those circumstances, the settlement efforts may have represented nothing more than such defendants' pragmatic judgment that it would be better to accept non-onerous terms than to continue to be bled white by the litigation process. There is nothing to support the inference that anything more was involved than nuisance value or an effort to avoid the cost of litigating plaintiffs' theories, rather than such defendants having a different perception of the merits than Opinion III thereafter took.

In summary, then, none of the factors urged by Hamers brings this case within the ambit of such decisions as *Ekanem* (which denied attorneys' fees under nonparallel circumstances) or *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1163–65 (7th Cir.1983) (in which the Court of Appeals upheld this Court's denial of attorneys' fees to the prevailing defendant). Instead this case calls for consideration of the possibility identified in *Hermes v. Hein*, 742 F.2d 350, 357–58 (7th Cir.1984) "that this suit may have become frivolous or vexatious at some point during the litigation." It thus only remains to review whether "at some point during the litigation" (more specifically, by September 27,

1984) Hamers' actual arguments as to subject-matter jurisdiction met the standard of nonfrivolousness required to avoid Section 1988 liability.

Because Opinion III dealt with Hamers' contentions at such great length,[8] this opinion will not repeat that process. Suffice it to say that many of Hamers' arguments represented flat-out misreading or misapplications of controlling authority (most frequently *Rosewell*); in other respects Hamers ignored the clear impact of *Grace Brethren;* in still others the statute of limitations principle confirmed in *Hamer* barred Hamers' contentions in this action;[9] and the remaining aspects of Hamers' claim were patently wanting in substantive terms as well. This Court has reviewed and applied to Hamers' situation the criteria identified in such cases as *Munson v. Friske*, 754 F.2d 683, 696–97 (7th Cir.1985) in light of Opinion III, and it finds Hamers' claims wanting in every respect *at least* by September 27, 1984. In sum, it was not only that Hamers' positions were patently without merit not later than that date, but—as required for liability under *Christiansburg*—they were frivolous and groundless in the legal sense.

Accordingly Hamers and their lawyers are held jointly and severally liable to Lake County Defendants for their attorneys' fees and expenses incurred after September 27, 1984. On or before April 8, 1986 Hamers are ordered to advise this Court and opposing counsel as to the extent, if any, that they contest the reasonableness of the claimed fees (either the time involved, the hourly rates, or the reasonableness of applying those rates on a straight time basis) or expenses. This Court will then establish any procedures necessary to determine the amount of the award.

---

**8.** Nothing should be inferred as to the force of Hamers' arguments from the fact Opinion III occupied something more than 30 typewritten pages. Though the arguments were really empty, there were so many of them it required a lot of space to dispose of them. For example, Hamers' memorandum in response to Lake County Defendants' Rule 12(b)(1) motion alone ran over 40 pages—and the documentary materials this Court also had to go through were substantial indeed.

**9.** Opinion III, 631 F.Supp. at 757 so held, though as previously stated this Court did not have to decide whether *Hamer* represented a total bar of Hamers' claim on limitations grounds.

APPENDIX 1

OFFICE OF THE

STATE'S ATTORNEY

LAKE COUNTY, ILLINOIS

FRED L. FOREMAN

STATE'S ATTORNEY

Lake County Building

18 N. County Street

Waukegan, Illinois 60085

(312)689–6644

October 18, 1984

Re: *Coleman, et al. v. McLaren, et al.,* 78 C 2117

Dear Plaintiffs' counsel:

On September 27, 1984 in the case entitled *Paul E. Hamer, et al. v. Jack L. Anderson, et al.,* 79 C 3627, Judge Aspen entered judgment in favor of the defendants, County of Lake and Lake County Collector, and against the plaintiffs, Paul and June Hamer. In his Memorandum Opinion and Order (a copy of which is attached hereto), Judge Aspen found that the Hamers had both "plain, speedy and efficient" and "plain, adequate and complete" remedies, and therefore under 28 U.S.C. § 1341 *and* under principles of comity and federalism the court lacked jurisdiction.

In the subject lawsuit, as in *Hamer v. Anderson,* the named Lake County plaintiffs are Paul and June Hamer. In the subject lawsuit, as in *Hamer v. Anderson,* the Hamers are represented by Mr. Uretsky; although here there are many additional plaintiffs' attorneys. As in *Hamer v. Anderson,* the subject lawsuit relates to matters of local real estate taxation. And in the subject lawsuit, as in *Hamer v. Anderson,* the Hamers through the plaintiffs' attorneys assert federal court jurisdiction by the allegation that Illinois fails to provide a "plain, speedy and efficient" remedy.

In light of Judge Aspen's decision, I am requesting that you immediately take those steps necessary to voluntarily dismiss the subject lawsuit pursuant to F.R.C.P. Rules 23(e) and 41(a)(2). During the more than 6 years which this lawsuit has been pending, I have found the subject lawsuit and the jurisdictional allegations contained therein to be unreasonable, vexatious, and frivolous. However, assuming that you believed you had reasonable grounds for making the jurisdictional allegations set forth in your complaint and the various amended complaints, those grounds have certainly been abrogated by Judge Aspen's decision. This conclusion is inescapable when Judge Aspen's decision is read in conjunction with Judge Shadur's previous decision in *Axelrod v. Earhart,* 565 F.Supp. 549 (N.D.Ill., 1983). Therefore, please voluntarily dismiss the subject lawsuit.

The Lake County State's Attorney's Office does not as a matter of practice keep records of time devoted to individual cases. However, should you elect to persist in pressing the subject lawsuit, please be advised that henceforth a record of all time devoted to representing my clients in the subject action will be maintained for purposes of a future petition for fees pursuant to F.R.C.P. Rule 11 and/or 42 U.S.C. § 1988.

As a final item for your consideration I give you the case of *Eichhorn v. County of Lake, et al.,* 80 C 4904. This case also involved a Lake County taxpayer's federal court lawsuit relating to matters of local real estate taxation. Following dismissal of the lawsuit, Judge Leighton granted my petition for attorney fees. In the order awarding fees, Judge Leighton ordered the plaintiff to pay one-half of my fee and ordered the plaintiff's attorney to pay the remaining one-half of my fee.

Think about it. And make your decision before the November 9, 1984 status hearing with Magistrate Jurco.

Sincerely,

FRED L. FOREMAN

State's Attorney of Lake County

/s/ James C. Bakk

JAMES C. BAKK
Assistant State's Attorney
Chief, Civil Division

APPENDIX 2

Norman Lettvin, Ltd.

Attorneys at Law

208 South LaSalle Street—Suite 1670

Chicago, Illinois 60604

(312)782–8862

October 19, 1984

Mr. James C. Bakk, Esq.
Asst. State's Attorney
18 N. County Street
Waukegan, Illinois 60085

Re: *Coleman v. McLaren—78 C 2117*

Dear Mr. Bakk:

The plaintiffs have received and considered your letter of October 18. That letter appears to suggest that Judge Aspen's decision in *Hamer v. Anderson* is *res judicata* with respect to Mr. Hamer's cause of action in the present case. In order for your contention to have any merit, you would have to be able to show that Mr. Hamer actually litigated, or could have litigated, in *Hamer* the issues which are presented to the court in *Coleman*.

The only issue presented to the court in *Hamer* was whether Illinois remedies are "plain, speedy and efficient" ("plain, adequate and complete") as to interest on tax refunds. Judge Aspen ruled that they are, within that narrow purview. The broader question that is presently before Judge Shadur could not have been presented to the court in the *Hamer case, as you well understood,* because we were already litigating that question at length in *Coleman.*

Judge Shadur has already rejected an attempt to make *Axelrod* a precedent in *Coleman* on page 6 of his Memorandum Order of October 4, 1983.

We think that the evidence accumulated to date in *Coleman* shows that our jurisdictional allegations are far from "unreasonable, vexatious and frivolous." We accordingly decline your offer to permit us to dismiss the *Hamer* action.

Sincerely,

/s/ Jack L. Uretsky
Jack L. Uretsky