Shearl DANENBERGER,
Plaintiff-Appellant,

v.

J. Thomas JOHNSON, Mark Frech and
Bill Fleischli, Defendants-Appellees.

No. 86–1561.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1986.

Decided May 4, 1987.

Mary Lee Leahy, Leahy & Leahy, Springfield, Ill., for plaintiff-appellant.

Rita M. Novak, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before COFFEY and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.*

COFFEY, Circuit Judge.

Plaintiff-appellant Shearl Danenberger appeals the district court's dismissal of her complaint pursuant to 42 U.S.C. § 1983 alleging that her First and Fourteenth Amendment rights were violated when she failed to receive a promotion within the Illinois Department of Revenue as she had failed to support the activities of the Republican Party. We affirm.

I

Initially, Danenberger filed a complaint against J. Thomas Johnson, the Director of the Illinois Department of Revenue, on October 23, 1984, seeking compensatory and punitive damages for a purported violation of her First and Fourteenth Amendment rights. Danenberger subsequently amended her complaint to name Mark Frech, the Director of the Governor's Office of Personnel, and William Fleischli, the Assistant Director of the Governor's Office of Personnel, as defendants. In her complaint, Danenberger alleged that she had been an employee of the department since 1977 and that in early March of 1984 she was interviewed about a promotion and transfer within the department. Later that month she was informed that her promotion had been approved and that it would be effec-

---

* The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

tive as of April 1, 1984. On March 30, 1984, the complaint alleges, Danenberger was advised that the promotion had been withdrawn as she had not supported the political activities of the Republican Party. Danenberger also argues that she was not eligible for the appointment without the approval of the Illinois' Governor's Office of Personnel; thus she could not receive the appointment to the vacant non-collective bargaining position even though all of the responsible officials in the Department of Revenue including the director approved of the promotion. The complaint also alleged that the Governor's Office of Personnel "places in vacancies in the departments under the jurisdiction of the Governor those who have favored the Administration and supported the Republican Party." The defendants in their answer denied that Danenberger had been refused a promotion because she failed to support the Republican Party and asserted the defense of qualified immunity. On November 5, 1985, the defendants moved to dismiss arguing that Danenberger's complaint failed to state a claim upon which relief could be granted and alternatively that as public officials they were entitled to a qualified immunity from Danenberger's suit. At the same time, the defendants also moved to stay further proceedings pending a ruling on their motion to dismiss based on qualified immunity for public officials. The docket sheet noted that the motion to stay was granted on January 22, 1986. It stated:

> "(Defts.) Motion to Stay Further Proceedings Pending a Ruling On Defendants' Motion to Dismiss Based on Qualified Immunity for Public Officials, ALLOWED, entered 1/26/86. (Mills, J.) Copy of d/e mailed to parties."

The district court granted the defendant's motion to dismiss on January 29, 1986 after Danenberger failed to file a response to the defendant's motion to dismiss. On February 4, Danenberger moved to vacate the trial court's judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure, and the district court denied the motion. Danenberger appeals.

## II

Initially, Danenberger argues that the trial court abused its discretion in refusing to vacate its judgment dismissing Danenberger's complaint maintaining that the district court should have given her an opportunity to respond to the defendants' motion to dismiss. Danenberger states that she failed to respond to the motion because she erroneously believed that all proceedings in the present case were stayed pending a decision in another case, *Rutan v. Republican Party,* 641 F.Supp. 249 (C.D.Ill.1986), on her motion to consolidate her case with that second pending case. In *Rutan,* as in the case at bar, the plaintiffs, Illinois governmental employees, alleged that they were denied promotions and other benefits because they failed to support the activities of the Republican Party. Danenberger filed her motion to consolidate after the defendants filed their motion to dismiss in the present case and, thus, misunderstood the status of the case at bar. Danenberger urges us to remand this case to the district court to allow her to respond to the defendants' motion to dismiss. In support of her contention that we should remand in order that she might be given an opportunity to respond to the defendants' motion to dismiss, Danenberger cites a number of our decisions in her brief in which we have reversed lower court judgments under the principles enunciated in Rules 59 and 60(b) of the Federal Rules of Civil Procedure. *See, e.g., Ellingsworth v. Chrysler,* 665 F.2d 180 (7th Cir.1981); *A.F. Dormeyer Company v. M.J. Sales and Distributing Co.,* 461 F.2d 40 (7th Cir.1972). "[T]he purpose of Rule 59 is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Charles v. Daley,* 799 F.2d 343, 348 (7th Cir.1986). The defendants-appellees argue the district court should not be required to vacate its judgment in order to allow Danenberger to respond to the defendants' motion to dismiss since 1) the district court's decision was correct, and because 2) this court's ruling remanding this case to permit Danenberger to respond to the defendants' motion to dismiss would be an unnec-

essary waste of judicial resources. The defendants-appellees maintain that the district court would have dismissed Danenberger's complaint regardless of whether or not she responded to the motion to dismiss since a correct application of the law in this matter mandated this result. In addition, Danenberger should have requested the district court to reconsider its decision when she made her motion under Rule 59. In *United States Labor Party v. Oremus*, 619 F.2d 683, 687 (7th Cir.1980), we stated that "[a] Rule 59(e) motion to alter or amend a judgment properly may be used to ask a district court to reconsider its judgment and correct errors of law." *See also A.D. Weiss Lithograph Company v. Illinois Adhesive Products Company*, 705 F.2d 249, 250 (7th Cir.1983). Thus, the defendants argue that Danenberger had the opportunity to present her arguments to the district court as to why her complaint should not have been dismissed when she made her motion pursuant to Rule 59 but failed to take advantage of it. Danenberger in fact failed to present her arguments when she made her Rule 59 motion.

■ The district court granted the defendants' motion to dismiss not because Danenberger failed to respond to the motion to dismiss but because, after analyzing the applicable case law, it held that the defendants were entitled to qualified immunity in this instance. *Danenberger v. Johnson*, No. 84-3417, slip op. (D.C. Ill. Jan. 29, 1986). We agree with the defendants' position that we would be wasting judicial resources were we to remand this case since the district court did not dismiss Danenberger's claim merely because she failed to respond to the defendants' motion to dismiss but more importantly because the defendants were entitled to qualified immunity in this case. Moreover, Danenberger had an opportunity to present her arguments concerning the defendants' qualified immunity to the district court through her Rule 59 motion and failed to do so.

■ We must now determine whether the district court properly dismissed Danenberger's complaint and properly held that the defendants-appellees were entitled to qualified immunity as public officials in denying Danenberger the promotion. Government officials performing discretionary functions are shielded from liability for civil damages in an action brought under 42 U.S.C. § 1983 unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *Benson v. Allphin*, 786 F.2d 268, 275 (7th Cir.1986). In *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the U.S. Supreme Court stated that "whether an official may prevail in his qualified immunity defense depends upon the 'objective reasonableness of his conduct as measured by reference to clearly established law.'" *Id.* at 3018 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). We have stated that "officials are not required to anticipate the extension of existing legal principles." *Benson v. Allphin*, 786 F.2d 268, 275 (7th Cir.1986). *See also Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *Murray v. Gardner*, 741 F.2d 434, 440 n. 2 (D.C.Cir.1984). Therefore, the question we must consider is whether there is a clearly established constitutional right prohibiting government officials from denying promotions and transfers to employees because of their lack of support for a particular political party. In deciding whether the defendants violated Danenberger's clearly established constitutional rights in this case, we note that "the facts of the existing caselaw must closely correspond to the contested action before the defendant official is subject to liability ..." *Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir.1986).

The United States Supreme Court has discussed the relationship between the First Amendment rights of public employees and politically motivated employment decisions in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In *Elrod v. Burns*, a recently elected Democratic Sheriff discharged a number of Republican em-

ployees of the Cook County Illinois Sheriff's Department "solely for the reason that they were not affiliated with or sponsored by the Democratic Party." 427 U.S. at 350, 96 S.Ct. at 2678. The Supreme Court held that the Cook County Sheriff's actions violated the First Amendment rights of the Republican employees, but failed to reach a consensus for a majority opinion. The plurality stated that "[p]atronage [the systematic rewarding of political supporters with public employment], therefore, is inimical to the process which undergirds our system of government and is 'at war with the deeper traditions of democracy embodied in the First Amendment.'" *Id.* at 357, 96 S.Ct. at 2681 (*quoting Illinois State Employees Union v. Lewis,* 473 F.2d 561, 574 (7th Cir.1972)). However, the plurality expressly limited the scope of its decision that politically motivated discharges of public employees violate the employees' constitutional rights, stating that "we are here concerned only with the constitutionality of dismissing public employees for partisan reasons." *Id.* 427 U.S. at 353, 96 S.Ct. at 2679.

In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court again held that politically-motivated discharges of public employees are improper unless "party affiliation is an appropriate requirement for effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1294. In *Branti,* however, the Court noted that it was considering only the constitutionality of politically motivated discharges. *Id.* at 513 n. 7, 100 S.Ct. at 1292 n. 7. To date, the Supreme Court has not addressed the constitutionality of denying an employee a promotion as a result of his or her lack of support for a particular political party.

In *LaFalce v. Houston,* 712 F.2d 292 (7th Cir.1983), we discussed the principles enunciated in *Elrod* and *Branti* and held that the First Amendment does not forbid a city to use political criteria in awarding public contracts. We stated that "decisions such as *Elrod* and *Branti* have reduced the role of patronage in politics but have not eliminated it entirely." *Id.* at 294. We further stated "[t]he desirability of reducing it [political patronage] still further raises profound questions of political science that exceed judicial competence to answer." *Id.* In *Avery v. Jennings,* 786 F.2d 233 (6th Cir.1986), the Sixth Circuit also considered the principles established in *Elrod* and *Branti* and held that a public employee hiring system which took into account potential employees' political affiliations was not in violation of any constitutional right. The court in *Avery* stated:

"We hold that although the first amendment prohibits official hiring policies based solely on political affiliation, it does not constitutionalize civil service standards or establish a hard and fast employment rule against weighing political factors. Neither Congress, a state legislature, nor a local administrator may 'enact a regulation' against hiring members of a particular political party, or exacting a loyalty oath, but elected officials may weigh political factors such as party allegiance along with other factors in making subjective hiring judgments."

*Id.* at 234 (citations omitted). The court in *Avery* also said that "*Elrod* and *Branti* did not affect normal patronage hiring systems in the United States because they were strict political affiliation discharge cases." *Id.* at 237. "In order to prevent patronage under present systems, the courts would have to constitutionalize a civil service system and oversee its operation." *Id.*

Danenberger maintains that our decision in *Hermes v. Hein,* 742 F.2d 350 (7th Cir. 1984), demonstrates that there is a clearly established constitutional right that prohibits government officials from denying promotions and transfers of employees because of political affiliations. In *Hermes,* a group of police officers brought an action under 42 U.S.C. § 1983 alleging that they had been denied promotions because of their political affiliations in violation of their First and Fourteenth Amendment rights. In affirming the district court's grant of a summary judgment in favor of the defendants, this court indicated that the officers might have prevailed if the record demonstrated that they were denied promotions solely because of their political

affiliations. Initially, we note that this court decided *Hermes* in August, 1984, several months after the occurrence of the events which culminated in this suit. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court stated:

"We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed."

*Id.* at 818, 102 S.Ct. at 2738 (citations and footnotes omitted). It cannot be said that any rights enunciated for the first time in *Hermes* were clearly established at the time Danenberger failed to receive her promotion. Thus, the defendants in this suit would still be entitled to qualified immunity regardless of whether *Hermes* clarified what rights public employees possess under the First and Fourteenth Amendments. Secondly, in order for a right to be "clearly established" it must be clearly recognized in existing case law. *Hermes* is the only case cited to this court which addresses the relationship between a public employee's First Amendment rights and a public employer's policy regarding promotions. Thus, even if, as Danenberger suggests, *Hermes* demonstrates that public employees have a right not to have their political affiliations considered in their employers' promotion decision-making process, this right was not established prior to *Hermes,* and, thus, the defendants in this case would still be entitled to qualified immunity since any such right enunciated in *Hermes* was not previously clearly recognized. As the Court stated in *Harlow,* "[i]f the law at that time [the time of the official's actions] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.*

In light of the existing case law, we hold that Danenberger had no clearly established constitutional right that prohibited the defendants from considering her failure to support the Republican Party in making their decisions regarding promotions. The district court thus properly dismissed Danenberger's complaint since the defendants were immune from her suit.

III

The judgment of the district court is AFFIRMED.